## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMBERLY GARTHWAIT, ET AL. | : | |
| Plaintiffs, | : | CIVIL CASE NO. |
| | : | 3:20-CV-00902 (JCH) |
| v. | : | |
| | : | |
| EVERSOURCE ENERGY | : | |
| COMPANY, ET AL., | : | |
| Defendants. | : | SEPTEMBER 27, 2021 |

**RULING ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 52)**

## I.     INTRODUCTION

Plaintiffs, former and current participants in the Eversource 401(k) Plan ("the Plan"), bring this putative class action against Eversource Energy Company ("Eversource") and other defendants under section 1132(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), section 1001 of title 29, et seq., of the U.S. Code.  Five named plaintiffs seek to represent the putative class: Kimberly Garthwait ("Garthwait") and Paul Corcoran ("Corcoran"), former Eversource employees and current participants in the Plan; and Cumal T. Gray ("Gray"), Kristine T. Torrance ("Torrance") and Michael J. Hushion ("Hushion"), former Eversource employees and former Plan participants (collectively, "Plaintiffs").  They bring their claims against the following defendants: Eversource; Eversource's Board of Directors ("the Board"); the Eversource Plan Administration Committee ("Administrative Committee"); the Eversource Investment Management Committee ("Investment Oversight Committee"); and Does Nos. 1-10 and 1-30, who are members of the Board, the Administrative Committee, and the Investment Oversight Committee (collectively, "Defendants").

1

Plaintiffs allege three counts against Defendants related to their management and oversight of the Plan: (1) breach of fiduciary duty; (2) failure to monitor fiduciaries and co-fiduciaries; and (3) in the alternative, knowing breach of trust.  Consolidated Am. Compl. at ¶¶ 89-91, 96-99, 103-04 ("Compl.").  Defendants breached their fiduciary duties, Plaintiffs allege, by mismanaging underperforming funds, permitting excessive recordkeeping fees, and maintaining high investment management fees in the Plan.

Before the court is the Defendants' Motion to Dismiss the Consolidated Amended Complaint.  See Defs.' Mot. Dismiss (Doc. No. 52).  Plaintiffs oppose this Motion.  See Pls.' Mem. in Opp'n to Defs.' Mot. To Dismiss ("Pls.' Opp'n") (Doc. No. 55).

For the reasons discussed below, the court grants in part and denies in part the Motion to Dismiss, dismissing, sua sponte and without prejudice to replead, all claims except those related to excessive recordkeeping fees for a lack of standing.

## II.   BACKGROUND

### A.   Allegations in the Amended Complaint[1]

#### 1.   Plan Characteristics

Eversource, a New England energy delivery company, Compl. at ¶ 14, offers its employees 401(k) retirement plan services through the Eversource 401(k) Plan ("the Plan").  Id. at ¶¶ 4-5.  This single-employer plan permits participating employees to direct their 401(k) contributions toward a slate of investment options.  Id. at ¶ 23. Like most retirement plans today, the Plan is a "defined contribution" plan, allowing

---

[1] Because, at the motion to dismiss stage, the court must accept all allegations in the Complaint as true, "we describe the facts as alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and construing any ambiguities in the light most favorable to upholding the plaintiff's claim." Sung Cho v. City of New York, 910 F.3d 639, 642 n.1 (2d Cir. 2018) (internal quotation marks and citations omitted).

participants to deposit their contributions into individual accounts.  Id. at ¶¶ 2, 23.  From their unique accounts, participants can choose to invest in the various mutual funds, Eversource common stock, or a self-directed brokerage account offered by the Plan.  Id. at ¶ 23.  The Plan also incurs administrative expenses, some of which are paid out of Plan assets and some of which come out of participants' investment income.  Id. at ¶ 23.

To oversee the Plan's management, the Board appointed the Administrative Committee and the Investment Oversight Committee as "authorized representatives" and plan fiduciaries under ERISA.  Id. at ¶ 15.  The Administrative Committee serves as the Plan Administrator, Id. at ¶ 16, while the Investment Oversight Committee assists Eversource in designing the Plan by establishing investment policies, choosing the investment options available to Plan participants, and monitoring the Plan's investment managers.  Id. at ¶ 17.  The Investment Oversight Committee also monitored the Plan's trustee and recordkeeper, Fidelity Management Trust Company ("Fidelity"), which held the Plan's assets in trust during the Class Period.  Id. at ¶¶ 17, 26, 40.  Does 1-10 appointed or monitored the committees, while Does 1-30 sat on the committees.  Id. at ¶¶ 15,18.

2.    Ownership and Injury Allegations

Plaintiffs allege that they and all Plan participants have "suffered financial harm as a result of the Plan's imprudent investment options and excessive fees, and were deprived of the opportunity to invest in prudent options with reasonable fees, among other injuries."  Id. at ¶ 22.  Furthermore, they allege that Defendants' fiduciary breaches have directly caused the Plan to suffer losses and damages, id. at ¶ 91, and that the Plan and its participants have lost millions of dollars of retirement savings.  Id. at ¶ 99.

3

Importantly, however, Plaintiffs' Consolidated Amended Complaint does not specify whether any of the named plaintiffs invested in any of the allegedly mismanaged funds.

        3.     Count I: Breach of Fiduciary Duty

In their first Count, Plaintiffs allege that Defendants breached their fiduciary duties under ERISA, causing the Plan's losses.  Id. at ¶¶ 89, 91.  Specifically, they allege that Defendants selected and retained actively managed funds that underperformed their passively managed counterparts, charged excessive recordkeeping fees, and allowed excessive investment management fees.

        a.     <u>Actively Managed Freedom Funds</u>

Most of the Plaintiffs' allegations center on a suite of seven actively managed target date funds referred to collectively as the Fidelity Freedom Funds ("Freedom Funds").  Id. at ¶ 28-29.  When Defendants selected the Plan's offerings, they chose to include these actively managed Freedom Funds rather than their passively managed counterparts, the Freedom Index Funds ("Freedom Index Funds").  Id. at ¶ 29.  While the Freedom and Freedom Index funds share a management team, the two funds differ in cost and in investment strategy. Id. at ¶ 30. The higher-fee Freedom Funds invest in riskier, actively managed mutual funds, while the lower-fee Freedom Index Funds invest only in passive funds that "track market indices." Id.  Moreover, the Freedom Fund underwent strategic changes in 2013 and 2014, allowing its managers more discretion to pursue riskier investment approaches.  Id. at ¶ 36.  Despite their higher-risk investment strategy, the Freedom Funds underperformed the Freedom Index Funds on a trailing three- and five-year annualized basis as of August 31, 2020.  Id. at ¶ 43. Defendants breached their fiduciary duties, Plaintiffs allege, by choosing to select and

retain the riskier and more expensive Freedom Funds to the detriment of Plan participants.  Id. at ¶ 44.

        b.     <u>Actively Managed Mutual Funds</u>

Along with the Freedom Funds, the Plan offers several other actively managed mutual funds which, Plaintiffs allege, Defendants should have replaced.  Id. at ¶¶ 45-55. Specifically, they contend that the Morgan Stanley Institutional Fund Emerging Markets Portfolio I, id. at ¶¶ 46-49, the Frank Russell Small Cap Fund, id. at ¶¶ 50-53,[2] and the Morgan Stanley Institutional Fund Small Company Growth Portfolio I, id. at ¶¶ 54-55, consistently and substantially underperformed their benchmarks.  Defendants' failure to recognize and replace these underperforming investments, Plaintiffs allege, constituted a breach of fiduciary duty. Id. at ¶ 55.

        c.     <u>Recordkeeping Fees</u>

In addition to their allegations about specific underperforming funds, Plaintiffs allege that Defendants charged excessive recordkeeping fees in breach of their fiduciary duties.  Id. at ¶¶ 56-57.  In 2017, the Plan had annual per-participant recordkeeping fees of $45, twenty-nine percent higher than the average fees for smaller

---

[2] Plaintiffs' Complaint discusses the performance of the Frank Russell Small Cap Fund Class Y. See Compl. at ¶ 50. However, as Defendants point out in their Motion to Dismiss and Plaintiffs concede in their Memorandum in Opposition, the Frank Russell Small Cap fund included in the Fund's investment menu is a collective trust, not a mutual fund. See Defs.' Mot. Dismiss at 24-25 and Ex. E (2018 Plan Form 5500), Schedule D (listing the Russell Small Cap Fund as a DFE with entity code C, which is the code for a collective trust); Pls.' Opp'n at 5 n. 6. Plaintiffs assert, though, that because the Complaint alleges that collective trusts "comprise of the same underlying investments as [their] mutual fund counterpart[s]", ¶ 65, a reasonable inference that the collective trust version of the Russell Small Cap Fund also underperformed its benchmark is warranted. Pls.' Opp'n at 27.

As discussed following, see, p. 9-16, infra, the court dismisses this claim for a lack of standing. Thus, because "standing is the threshold question", the court will not decide whether this claim is adequately alleged. See Ross v. Bank of Am., N.A., 524 F.3d 217, 222 (2d Cir. 2008) (quotation marks omitted).

plans with less negotiating power.  Id. at ¶ 57.  Defendants, Plaintiffs allege, did not compare or benchmark the Plan's recordkeeping fees to identify better options.  Id. at ¶ 58.  Defendants also exacerbated the harm to participants' returns by engaging in revenue sharing, wherein earnings from the Plan's investment options may be used to pay a portion of the Plan's expenses.  Id. at ¶ 59.  Revenue sharing amounts are placed into an account before disbursement to Plan beneficiaries, Id. at ¶ 60, and eventually rebated in the form of a credit to Plan participants if the revenue sharing amount exceeds the total administration costs of the investment.  Id. at ¶ 59.  Because credits held in revenue sharing accounts do not gain the compounding returns enjoyed by invested capital, participants lost the opportunity to earn on those portions of their retirement accounts.  Id. at ¶ 60.  In failing to identify and remedy the higher fees that the Plan and its participants were paying, Plaintiffs allege, Defendants breached their fiduciary duties.  Id. at ¶ 61.

### d.    Expense Ratios

Finally, Plaintiffs allege that Defendants failed to monitor the average expense ratios charged to similarly sized plans.  Id. at ¶ 62.  Sixty-seven percent of the Plan's investment options, Plaintiffs contend, were more expensive than those offered in comparable plans.  Id.  Moreover, Defendants failed to offer lower-fee collective trusts rather than mutual funds, specifically neglecting to negotiate to convert the Fidelity Growth Company K mutual fund to a collective trust with a lower expense ratio.  Id. at ¶ 64-65.  Defendants further breached their duties by failing to monitor the Plan's investment options to ensure that they were in the least expensive share class.  Id. at ¶ 66.  Despite the lack of any factors, other than price, distinguishing different class shares in the same investment, Defendants retained the Lord Abbett Developing

6

Growth I share class and declined to replace it with the cheaper Lord Abbett Developing Growth R6 share class.  Id. at ¶ 66.  Thus, Plaintiffs allege, Defendants breached their fiduciary duties by failing to recognize and rectify the higher fees charged to the Plan and its participants.  Id. at ¶ 67.

4.   Counts II and III: Failure to Monitor or Co-Fiduciary Breach, and Liability for Knowing Breach of Trust

In Counts II and III, Plaintiffs reassert all of their allegations from Count I. Id. at ¶¶ 93, 102.  Further, in Count II, Plaintiffs allege that Eversource and the Committees breached their fiduciary duties to monitor their appointees who were responsible for maintaining the Plan.  Id. at ¶ 96-99.  All of the Defendants, Plaintiffs claim, also failed to address their co-fiduciaries' breaches.  Id. at ¶ 101.  Plaintiffs plead Count III in the alternative, alleging that, to the extent that any of the Defendants are not fiduciaries or co-fiduciaries under ERISA, they have participated in a knowing breach of trust and are liable for the conduct alleged in the Complaint.  Id. at ¶ 103-04.

## III.   LEGAL STANDARDS

### A.   Standing: 12(b)(1)

Article III, Section 2 of the U.S. Constitution limits the jurisdiction of federal courts to the resolution of cases and controversies.  See, e.g., Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012).  To ensure that federal courts consider only "those disputes in which the parties have a concrete stake", plaintiffs must show that they have "standing." Bhatia v. Piedrahita, 756 F.3d 211, 218 (2d Cir. 2014) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167 (2000)).  Where plaintiffs lack Article III standing, a court "has no subject matter jurisdiction to hear their claim." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,

433 F.3d 181, 198 (2d Cir. 2005).  Thus, as Article III standing "goes to [a] court's subject matter jurisdiction, it can be raised <u>sua sponte</u>." <u>Id.</u>

Because the elements of standing are "an indispensable part of the plaintiff's case", a plaintiff must allege his or her standing "with the manner and degree of evidence required at the successive stages of the litigation." <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992).  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to show a viable injury, "for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." <u>Id.</u>

B.    <u>Failure to State a Claim: 12(b)(6)</u>

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in the Complaint as true, and draws all reasonable inferences in the non-movant's favor.  <u>See</u> <u>La Liberte v. Reid</u>, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." <u>Iqbal</u>, 556 U.S. at 678.

With respect to ERISA claims, the Second Circuit has recognized that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." <u>Pension Benefit Guaranty Corp. v.</u>

8

Morgan Stanley Investment Management Inc., 712 F.3d 705, 718 (2d Cir. 2013)

(hereinafter "PBGC") (internal quotation marks and alteration omitted).  Thus, claims of

breach of fiduciary duty may survive at the motion to dismiss stage "if the complaint

alleges facts that, if proved, would show that an adequate investigation would have

revealed to a reasonable fiduciary that the investment at issue was

improvident." Id. (internal quotation marks and alteration omitted).  A complaint relying

on circumstantial factual allegations to show a breach of fiduciary duties under ERISA

generally must "allege facts, accepted as true, showing that a prudent fiduciary in like

circumstances would have acted differently." Sandoval v. Exela Enter. Sols., Inc., No.

3:17CV1573 (DJS), 2020 WL 9259108, at *2 (D. Conn. Mar. 30, 2020) (citation

omitted).  To support a claim that a fiduciary's decision was imprudent, allegations must

be "based upon information available to the fiduciary at the time . . . and not from the

vantage point of hindsight." PBGC, 712 F.3d at 718 (quoting In re Citigroup ERISA

Litig., 662 F.3d 128, 141 (2d Cir. 2011)).

## IV.   DISCUSSION

### A.   Standing

The court has identified an apparent lack of standing on the part of the named

plaintiffs, because they have not alleged ownership in any of the funds mentioned in the

Complaint.  To bring suit under ERISA, a plaintiff must have both a cause of action

under the relevant statute and constitutional Article III standing.  See Am. Psychiatric

Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016).  Section

1132(a)(2) of title 29 of the U.S. Code creates a statutory cause of action and "confers

standing" on those who can sue to remedy a breach under ERISA.  Long Island Head

Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., 710 F.3d

57, 65 (2d Cir. 2013) (hereinafter <u>Head Start</u>).  Under Section 1132(a)(2), a suit may be brought by "the Secretary . . . a participant, beneficiary or fiduciary" to seek "appropriate relief under section 1109 of this title" for breach of fiduciary duty.  29 U.S.C. §§ 1132(a)(2) and 1109(a). Suits under sections 1109(a) and 1132(a)(2) are derivative rather than individual suits and must be "brought in a representative capacity on behalf of the plan." <u>Head Start</u>, 710 F.3d at 65; <u>see also</u> <u>LaRue v. DeWolff</u>, 552 U.S. 248, 251-52 (2008) (stating that these provisions are meant to "protect the entire plan, rather than the rights of an individual beneficiary").

However, ERISA's statutory cause of action alone cannot endow a plaintiff with standing; she must also show that she has standing under Article III.  <u>See</u> <u>Thole v. U.S. Bank N.A.</u>, 140 S. Ct. 1615, 1620 (2020).  To meet the "irreducible constitutional minimum" of Article III standing, a plaintiff must establish three elements: "(1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." <u>Mahon</u>, 683 F.3d at 62; <u>see also</u> <u>Thole</u>,140 S. Ct. at 1618.[3]

In recent years, district courts in this Circuit have taken two divergent approaches to Article III standing in ERISA cases when plaintiffs allege injuries due to deficient

---

[3] In a class action like the instant case, a plaintiff must establish his standing to litigate the claims of the absent class members by alleging (1) "that he personally has suffered some actual injury" as a result of the defendants' conduct, and (2) that the conduct "implicates the same set of concerns" as the same defendants' conduct alleged to have harmed other class members. <u>See</u> <u>NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.</u>, 693 F.3d 145, 162 (2d Cir. 2012). However, the fact "that a suit may be a class action", as here, "adds nothing to the question of standing", because named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and purport to represent." <u>Lewis v. Casey</u>, 518 U.S. 323, 357 (1996) (internal quotation marks omitted); <u>see also</u> <u>Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC</u>, 433 F.3d 181, 199 (2d Cir 2005) (noting that "class representatives must have standing" in an ERISA action).

management or performance of funds in defined-contribution plans.  The split stems from some courts' hesitancy to apply the same legal standards to defined-contribution plans, in which participants manage their own accounts and collect gains and losses on their own contributions, and defined-benefits plans, in which participants do not control their own assets but receive fixed lump-sum monthly payments.  In particular, courts are divided as to whether a Second Circuit case concerning defined-benefit plans, Head Start, should extend to cases concerning defined-contribution plans.  See 710 F.3d 57.

In Head Start, the Second Circuit found that participants in a defined-benefit plan had standing to sue for injuries to their retirement plan, as ERISA confers statutory standing on plaintiffs with a common interest in the financial integrity of the plan who are in the "zone of interests ERISA was intended to protect." 710 F.3d at 65.  ERISA, the court reiterated, "authorizes recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Id., at 66 (internal quotation marks omitted) (quoting LaRue, 552 U.S. at 256 (2008)).  The court further found that the plaintiffs had Article III standing because they "asserted their claims in a derivative capacity, to recover for injuries to the Plan caused by the Administrators' breach of their fiduciary duties." Id. at 67 n.5.

In the wake of Head Start, some lower courts have applied this approach to defined-contribution plans, concluding that plaintiffs have standing where they allege an injury to the plan, notwithstanding a particular plaintiff's individual losses.  In Leber v. Citigroup 401(k) Plan Inv. Comm., for instance, the court applied Head Start and held that the plaintiffs in a defined-contribution case had standing to assert all of their claims, even though they did not invest in each of the funds at issue.  323 F.R.D. 145, 155

(S.D.N.Y. Nov. 27, 2017) (collecting cases applying <u>Head Start</u> to defined-contribution plans).[4] Because ERISA suits under Section 1332(a)(2) are derivative in nature, the court held, plaintiffs could assert claims on behalf of the claim even when "only some of these alleged losses manifested themselves in the named plaintiffs' individual accounts." <u>Id.</u> at 156 (after citing <u>LaRue</u>, 552 U.S., at 256 ("[29 U.S.C. § 1132(a)(2)] authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.")).

Other courts, however, have denied standing in the defined-contribution context where a plaintiff has not personally invested in the particular underperforming funds at issue.  <u>See</u> <u>In re UBS Erisa Litig.</u>, No. 08-CV-6696 RJS, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014) ("Plaintiff can only demonstrate a constitutionally sufficient injury by pointing to her individual account's specific losses during the class period."), <u>aff'd sub nom.</u> <u>Taveras v. UBS AG</u>, 612 F. App'x 27 (2d Cir. 2015) (summary order) ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant."); <u>see also</u> <u>Patterson v. Morgan Stanley</u>, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) ("Losses incurred by

---

[4] The <u>Leber</u> court also acknowledged that its approach differs from that of courts in most other Circuits, noting:

> "[T]he Second Circuit's eschewal of an individualized injury requirement in <u>Long Island Head Start</u> makes it an outlier among its sister circuits. <u>See</u> <u>Perelman v. Perelman</u>, 793 F.3d 368, 375–76 (3d Cir. 2015) (collecting cases and noting that the "reasoned consensus" of federal appellate courts is that individualized injuries are required even in actions brought "in a 'derivative' or 'representative' capacity on behalf of the Plan"); <u>see also</u> <u>Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC</u>, 433 F.3d 181, 200 (2d Cir. 2005) (citing approvingly to <u>Harley v. Minn. Mining & Mfg. Co.</u>, 284 F.3d 901, 906–07 (8th Cir. 2002), which held that "an ERISA Plan participant or beneficiary must plead a direct injury in order to assert claims on behalf of a Plan")."

<u>Leber</u>, 323 F.R.D. at 156.

funds in which Plaintiffs did not invest cannot have impaired the value of Plaintiffs' individual accounts. Therefore, Plaintiffs have not been injured as to those funds." (internal citation omitted)).  Recently, one district court declined to apply Head Start in a case presenting nearly identical claims to the instant Consolidated Amended Complaint. See In re Omnicom ERISA Litig., No. 20-CV-4141 (CM), 2021 WL 3292487, at *1, 10 (S.D.N.Y. Aug. 2, 2021) (hereinafter "Omnicom").

In Omnicom, the plaintiffs were former and current participants in a defined-contribution plan alleging fiduciary breaches for imprudent investments in the Freedom Funds and other mutual funds, excessive recordkeeping fees, and high management fees.  See id. at *1.  The plaintiffs in that case asserted that they had standing to, on behalf of their plan, "challenge *any* injury to the [p]lan, even in products in which they did not invest . . . ." Id. at *7 (emphasis in original).  Ultimately, the Omnicom court found that the plaintiffs lacked standing to sue for injuries resulting from products in which they did not invest because they could not have suffered cognizable injuries in fact with respect to the mismanagement of those funds.  See id. at *10.  The poor performance of those products did not "impair the value of plan assets" in the "individual account" of the named plaintiffs.  Id. at *9  (citing Larue, 552 U.S. at 256).  Thus, the plaintiffs did not have a "concrete stake" in the injury to their plan and could not bring suit on those claims.  Id.  However, importantly, the Omnicom court only dismissed claims related to the mismanagement of specific funds in which the plaintiffs had not invested.  See id. at * 10.  The court declined to dismiss claims related to recordkeeping fees for all participants, suites of funds in which the plaintiffs had invested, or management fees

when plaintiffs had alleged that they invested in some, but not all, of the plan's funds. Id.

Thus, whether Head Start applies to a defined-contribution case where Plaintiffs have alleged ownership in some funds and not others remains a contested question. However, that question is not one this court needs to resolve today, because here, Plaintiffs have made no specific ownership allegations whatsoever.  Plaintiffs' Complaint contains allegations regarding Defendants' selection, retention, and performance of the Fidelity Freedom Fund target date suite, the Morgan Stanley Institutional Fund Emerging Markets Portfolio I, the Frank Russell Small Cap Fund, and the Morgan Stanley Institutional Fund Small Company Growth Portfolio.  See Compl. at ¶¶ 29, 46, 50, 54.  In addition, Plaintiffs list twelve of the Plan's eighteen investment options that were substantially more expensive than comparable funds in similar plans.  Id. at ¶ 62  Plaintiffs also allege that Defendants should have replaced the Fidelity Growth Company K fund with its collective trust equivalent and exchanged the Lord Abbett Developing Growth I for a lower share class.  Id. at ¶¶ 64-66.  However, the Complaint is devoid of specific allegations that the named plaintiffs owned any of the mentioned funds at any point during the relevant time period.

This court's review of case law, without the benefit of the parties' briefing, reveals no cases in this Circuit that have found standing without a named Plaintiff's alleged investment in at least one allegedly imprudently managed or selected fund.  See, e.g., Omnicom, 2021 WL 3292487, at *10 (S.D.N.Y. Aug. 2, 2021) (holding that plaintiffs lacked Article III standing to sue on behalf of injuries other may have suffered regarding

funds in which named plaintiffs elected not to invest);[5] cf. Leber, 323 F.R.D. at 156-57

(S.D.N.Y. 2017) (determining that plaintiffs had standing where they had invested in at

least one of the allegedly mismanaged funds); see also Brown v. Daikin America, Inc.,

18-cv-11091 (PAC), 2021 WL 1758898, at *2 (S.D.N.Y. May 4, 2021) (determining that

plaintiffs had standing where they personally invested in some of the available

investment offerings during the class period).  Indeed, in several recent cases with

similar facts, plaintiffs amended their initial complaints to add allegations that they

owned specific funds within their respective plans.  Compare Compl., Sacerdote v. New

York Univ., No. 16-CV-6284 (KBF), 2017 WL 3701482, at *8-9 (S.D.N.Y. Aug. 25,

2017), vacated on other grounds Sacerdote v. New York Univ., No. 18-2707-CV, 2021

WL 3610355, at *4 (2d Cir. Aug. 16, 2021) (Doc. No. 1), with Am. Compl. at ¶ 8,

Sacerdote, 2017 WL 3701482 (16-cv-6284) (Doc. No. 39); Compl., Cates v. Trustees of

Columbia Univ., No. 16-cv-6524 (KFB), 2017 WL 3724296, at *2 (S.D.N.Y. Aug. 28,

2017) (Doc. No. 5), with Am. Compl. at ¶ 8, Cates, 2017 WL 3724296 (16-cv-6524)

(Doc. No. 76-1); Compl., Vellali v. Yale Univ., 308 F. Supp. 3d 673, 684-85 (D. Conn.

2018) (Doc. No. 1), with Am. Compl. at ¶ 8, Vellali, 308 F. Supp. 3d 673 (3:16-cv-01345)

(Doc. No. 57).  Here, though, Plaintiffs have offered no allegations showing which funds,

if any, they owned.

In their Complaint, Plaintiffs allege that standing is proper because they "suffered

financial harm as a result of the Plan's imprudent investment options and excessive

fees, and were deprived of the opportunity to invest in prudent options with reasonable

---

[5] The court in Omnicom deemed the plaintiffs' Complaint amended to include specific investment allegations when the defendant revealed in its Motion to Dismiss that the plaintiffs had invested in five of the Plan's funds during the relevant period. See 2021 WL 3292487 at * 1.

fees." Compl. at ¶ 22. While, at the motion to dismiss stage, the court takes all factual allegations in the complaint as true, see Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015), the court cannot rely on such "conclusory statements." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Beyond these insufficient conclusory statements, Plaintiffs have offered no allegations that they own any of the funds at issue in this case.

Thus, the court concludes that Plaintiffs do not have Article III standing to bring their other claims related to the management, retention, and performance of specific funds or the excessive management fees attached to specific funds on the basis of the allegations presently in the Consolidated Amended Complaint.  Because Plaintiffs have made no allegations whatsoever regarding their ownership of the funds at issue in the case, this court cannot conclude there is an adequate injury in fact to support standing on the claims regarding the Fidelity Freedom Funds, the individual mutual funds, or the funds charging excessive management fees or expense ratios.  The court therefore dismisses these claims, sua sponte, for lack of jurisdiction, but does so without prejudice to replead.

However, as in Omnicom, this court concludes that Plaintiffs do have standing to assert their recordkeeping fee claims, as Plaintiffs allege these $45 fees are charged to all Plan participants, regardless of which investment options they select.  Compl. at ¶ 57.  Plaintiffs are being overcharged, they allege, and Defendants have failed to negotiate for or find a cheaper alternative, causing Plaintiffs harm that could be redressed by monetary damages or equitable relief.  See Malone on Behalf of Univ. of Chicago Ret. Income Plan for Emps. v. Tchrs. Ins. & Annuity Ass'n of Am., No. 15-CV-

08038 (PKC), 2017 WL 913699, at *3 (S.D.N.Y. Mar. 7, 2017) (holding that plaintiffs

incurred a redressable injury in fact where they alleged their plans' service providers

were overcharging).  Because Plaintiffs have alleged a sufficient redressable injury for

Article III standing with regards to the recordkeeping fees and ERISA provides a cause

of action, Plaintiffs do have standing to pursue these claims.  Thus, the court turns, in

the following section, to the question of whether Plaintiffs have adequately alleged that

Defendants breached their fiduciary duties with respect to the Plan's recordkeeping

fees.

   B.   Recordkeeping Fees

      1.   Count I: Breach of Fiduciary Duty

   "ERISA's central purpose is to protect beneficiaries of employee benefits

plans." PBGC, 712 F.3d at 715 (internal quotation marks omitted) (citing In re Citigroup

ERISA Litig., 662 F.3d 128, 135 (2d Cir. 2011)).  To this end, ERISA "subjects pension

plan fiduciaries to a duty of prudence." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S.

409, 425-426 (2014).  Under Section 1104(a), which establishes the "prudent man

standard of care", a fiduciary must discharge his duties with respect to a plan "solely in

the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a).  The same

section binds fiduciaries to a duty of "complete loyalty" to plan participants.  Rothstein v.

Am. Int'l Grp., Inc., 837 F.3d 195, 208-09 (2d Cir. 2016) (internal quotations omitted).

The statute further requires that an ERISA fiduciary act:

          (A) for the exclusive purpose of:
              (i)  providing  benefits  to participants and  their
              beneficiaries; and
              (ii)   defraying    reasonable    expenses    of
              administering the plan;
          (B) with the care, skill, prudence, and diligence under
          the circumstances then prevailing that a prudent man

17

> acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan in so far as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a).

To show that defendants breached their duties by allowing exorbitant fees, plaintiffs must allege that the fees were "excessive relative to the services rendered." Sandoval, 2020 WL 9259108, at *7 (denying a motion to dismiss a claim for excessive recordkeeping fees where a disputed issue of fact existed as to whether fees were excessive relative to services) (internal quotation marks omitted) (quoting Young v. General Motors Inv. Management Corp., 325 F. App'x 31, 33 (2d Cir. 2009)).  Courts have denied motions to dismiss recordkeeping fees claims where, as here, plaintiffs allege that costs were excessive and "the plan failed to use its size and presumed negotiating power to reduce costs." Omnicom, 2021 WL 3292487, at *15 (citing In re Quest Diagnostics Inc. ERISA Litig., No. CV 20-07936-SDW-LDW, 2021 WL 1783274, at *4 (D.N.J. May 4, 2021)); see also Sacerdote, 2017 WL 3701482, at *8-9, vacated on other grounds Sacerdote, 2021 WL 3610355, at *4.

Here, Plaintiffs sufficiently allege that the Plan overcharged for recordkeeping costs and failed to negotiate for lower fees.  They claim that the Plan's $45 annual recordkeeping fee was excessive compared to other plans' fees and the actual value of Fidelity's services. Compl. at ¶¶ 56-57.  The Plan's sizeable $3 billion in assets and

11,484 participants,[6] Plaintiffs argue, left the Defendants with considerable power to bargain for lower fees.  Id. at ¶ 56.  Despite the Plan's clout, its fees were $10 higher than 2017 industry averages for smaller plans with less negotiating power, according to the 401k Averages Book 20th Edition.  Id.  What's more, the fees were two to three times higher than the actual value of Fidelity's services.  Id. at ¶ 57.

Defendants contend that Plaintiffs have failed to state a plausible claim, raising several issues of fact.  First, Defendants dispute whether the $45 fees exceed reasonable market standards.  Defs.' Mem. of Law in Support of Motion to Dismiss Consolidated Am.  Compl. at 31 (hereinafter Defs.' Mem.).  Second, they argue that Plaintiffs were mistaken in relying on certain figures from the 401k Averages Book, and that the relevant average recordkeeping fee is $360, not $35.  Id. at 41.  Third, they challenge Plaintiffs' allegation that larger plans have more negotiating power than smaller plans.  Id.  At this stage, however, the court accepts Plaintiffs' well-pleaded allegations as true.  See Iqbal, 556 U.S. 662 at 678.  Thus, these factual disputes are properly resolved after discovery and not at this early stage of litigation.  See, e.g., Sandoval, 2020 WL 9259108, at *8 (finding that a factual dispute over whether a recordkeeper received excessive compensation "cannot be resolved at this stage of litigation, i.e., on the basis of a motion to dismiss."); see also Omnicom, 2021 WL 3292487 at *15 (finding that questions as to whether a plan's recordkeeping fees were reasonable were properly reserved for after discovery).

Citing to Seventh Circuit precedent, Defendants also argue that Plaintiffs failed to identify an alternative recordkeeper who would outperform Fidelity.  Id. at 32 (citing

---

[6] As of December 31, 2018. Compl. at ¶ 56.

Divane v. Nw. Univ., 953 F.3d 980, 991 (7th Cir. 2020), cert. granted sub nom. Hughes
v. Nw. Univ., No. 19-1401, 2021 WL 2742780 (U.S. July 2, 2021).  This court
acknowledges that the U.S. Supreme Court has granted certiorari in Hughes to resolve
a circuit split as to whether allegations that a defined-contribution plan charged
participants excessive fees are sufficient to state a claim for breach of fiduciary duty
under ERISA.  See 2021 WL 2742780.  However, given that the Supreme Court has not
yet issued its ruling, this court will follow the majority of district courts in this Circuit.  At
the pleading stage, courts generally have denied motions to dismiss claims that fees
were excessive and that fiduciaries failed to negotiate for or seek lower fees when
paired with allegations similar to those in this case.  See Vellali, 308 F. Supp. 3d at 684-
85; Cunningham v. Cornell Univ., No. 16-cv-6525 (PKC), 2017 WL 4358769, at *6
(S.D.N.Y. Sept. 29, 2017) (appeal filed) (collecting cases); Cates, 2017 WL 3724296, at
*2 (S.D.N.Y. Aug. 28, 2017); Sacerdote, 2017 WL 3701482, at *8-10 vacated on other
grounds Sacerdote, 2021 WL 3610355, at *4; Omnicom, 2021 WL 3292487, at *15.
Thus, Plaintiffs' excessive recordkeeping fee claims are sufficient to state a claim.

    In combination with their overarching claims that Defendants allowed
unreasonable recordkeeping fees, Plaintiffs allege that the Plan's revenue sharing
practices led to additional losses for participants.  See Compl. at ¶¶ 59-60.  As
Defendants argue and courts in this Circuit have held, using revenue sharing to pay for
recordkeeping services is not "unreasonable in and of itself." See Defs.' Mem. at 34-35
(citing Ruling on Motion to Dismiss at 11, Sandoval, No. 3:17-cv-1573 (DJS) (Doc. No.
31) and Rosen v. Prudential Ret. Ins. & Annuity Co., No. 3:15-CV-1839 (VAB), 2016 WL
7494320, at *11 (D. Conn. Dec. 30, 2016), aff'd, 718 F. App'x 3 (2d Cir. 2017) (summary

20

order)).  While it is true that the mere use of revenue sharing does not violate a fiduciary's duties, here, Plaintiffs allege more.  First, the revenue sharing amounts were excessive when added to the $45 per participant recordkeeping fees.  See Compl. at ¶¶ 59-60.  Second, Defendants' practice of holding investors' money in revenue sharing accounts without returning it to participants until "years later" led to missed opportunities for compounding returns.  See Compl. at ¶¶ 59-60.  Thus, while, as both parties agree, revenue sharing is not illegitimate as a general matter, see Pls.' Opp'n at 37; Defs.' Mem. at 34-35, "the claimed industry-wide prevalence of revenue-sharing . . . does not negate the duty to ensure reasonable fees regardless of the fee structure." See Vellali, 308 F. Supp. 3d at 685.  Because Plaintiffs have plausibly alleged that exorbitant costs result from Defendants' revenue-sharing practices, they have stated an adequate claim.

Plaintiffs have sufficiently alleged that Defendants failed to leverage the large Plan to negotiate for lower fees, resulting in Fidelity's overcharging for recordkeeping. Accordingly, this court concludes that, with respect to the Plan's excessive recordkeeping fees, Plaintiffs have adequately alleged breach of fiduciary duty claims for Count I.[7] Defendants' Motion to Dismiss is therefore denied with respect to the Plaintiffs' Count I excessive recordkeeping fee claims.

---

[7] Plaintiffs adequately allege breaches of both the duty of prudence and the duty of loyalty with respect to the recordkeeping fees. To state a claim for breach of loyalty, "a plaintiff must allege facts that permit a plausible inference that the defendant engaged in transactions involving self-dealing or otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests." Vellali, 308 F. Supp. 3d at 688 (D. Conn. 2018) (cleaned up) (quoting Sacerdote, 2017 WL 3701482, at *5 vacated on other grounds Sacerdote, 2021 WL 3610355, at *4). Here, plaintiffs have alleged facts sufficient for the court to draw a plausible inference that Defendants' failure to negotiate recordkeeping fees, compromising participants' interests, was rooted in Defendants' existing relationship with Fidelity, creating conflicting interests. See Compl. at ¶ 40, 26.

     2.     Counts II and III: Failure to Monitor and Knowing Breach of Trust

Plaintiffs' Count II and Count III claims for failure to monitor fiduciaries and co-fiduciaries and knowing breach of trust "are entirely dependent on whether they have stated a claim for breach of fiduciary duty." Omnicom, 2021 WL 3292487, at *16. Because Plaintiffs have adequately alleged a breach of fiduciary duty under Count I with regards to the Plan's recordkeeping fees, they also sufficiently state claims under Counts II and III as they relate to those fees.

An "appointing fiduciary's duty to monitor is well-established." Cunningham, 2017 WL 4358769, at *11 (quoting In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 477 (S.D.N. Y 2005)); see also Vellali, 308 F. Supp. 3d at 691 (D. Conn. 2018) (collecting cases).  The duty stems, in large part, from regulations requiring a fiduciary with the power to appoint other fiduciaries to review "the performance of trustees and other fiduciaries . . . to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8.  In other words, when those a fiduciary oversees act negligently, the fiduciary has a duty to remove them.  See Omnicom, 2021 WL 3292487, at *16.

Here, Plaintiffs allege that Eversource and the Administrative Committee were responsible for appointing, supervising, and removing members of the committees. Compl. at ¶¶ 94-95.  In addition, they claim, Eversource and both of the committees had an obligation to ensure that any tasks they delegated were performed in compliance with statutory standards.  Id. at ¶ 97.  These fiduciaries failed to monitor or remove breaching appointees to the detriment of the Plan and its participants, id. at ¶ 98, breaching their own duties to monitor.

Defendants contest Plaintiffs' failure to monitor claims, submitting that "[p]laintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA." Defs.' Mem. at 37 (citing Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56, 68 (2d Cir. 2016)).  In the alternative, Defendants suggest, even if Plaintiffs have stated a breach of duty claim, their failure to monitor claims are unsupported by all but "conclusory allegations." Defs.' Mem at 37.

However, Plaintiffs have adequately alleged a breach of fiduciary duty with respect to their recordkeeping claims in Count One.  Further, they have pleaded that Eversource and the Committees appoint and oversee fiduciaries who have breached their duties.  Given the early stage of this litigation and that the Plaintiffs have appropriately alleged an underlying breach of duty, Plaintiffs' allegations are sufficiently plausible to state their recordkeeping claims.  See, e.g., Falberg v. Goldman Sachs Group, 2020 WL 3893285, at *15 (S.D.N.Y. July 9, 2020) ("Because [p]laintiff's other ERISA claims survive [d]efendants' motion . . . [p]laintiff's monitoring claim survives as well."); see also Omnicom, 2021 WL 3292487, at *16.  Thus, Plaintiffs have sufficiently alleged failure to monitor claims as they relate to excessive recordkeeping fees.

As for Plaintiffs' knowing breach of trust claims, which they plead in the alternative, breach of trust claims are generally interchangeable with breach of duty claims except that breach of trust claims can only be brought against non-fiduciaries. See In re Onmicom, 2021 WL 3292487, at *17 (citing Reliant Transportation, Inc. v. Division 1181 Amalgamated Transit Union, No. 18-cv-4561, 2019 WL 6050345, at *5 n.10 (E.D.N.Y. Nov. 14, 2019).  Therefore, courts apply the same analysis when they consider fiduciary duty and breach-of-trust claims. See id.

Defendants protest that Plaintiffs do not "allege facts from which knowing participation in a breach by any . . . defendant could be inferred." Defs.' Mem. at 38. However, Plaintiffs allege that all Defendants "possessed the requisite knowledge and information" to avoid fiduciary breaches and "knowingly participated" in the breaches by allowing the Plan to offer poor and pricey investments and incur expenses.  Compl. at ¶ 104.  Given the Complaint's allegations that many of the Defendants were responsible for supervising or appointing other fiduciaries and all of the Defendants played interconnected roles in influencing either the Plan or its overseers, Plaintiffs have stated a claim, in the alternative, for knowing breach of trust.  Thus, Defendants' Motion to Dismiss is denied with respect to Plaintiffs' excessive recordkeeping fee claims in Count II and III.

## V.    CONCLUSION

For the reasons explained above, the court denies in part the Defendants' Motion to Dismiss (Doc. No. 52) with respect to Plaintiffs' claims in Counts I, II, and III related to excessive recordkeeping fees. The court grants in part the Defendants' Motion to Dismiss with regards to Plaintiffs' claims in Counts I, II, and III related to (1) the selection, retention, and mismanagement of the Freedom Funds, (2) the selection, retention, and mismanagement of the Morgan Stanley Institutional Fund Emerging Markets Portfolio I, the Frank Russell Small Cap Fund, and the Morgan Stanley Institutional Fund Small Company, and (3) the excessive fees and expense ratios generated by the twelve allegedly overly expensive investment options, the Fidelity Growth Company K fund, and the Lord Abbett Developing Growth I share class.  The

court dismisses these claims for lack of jurisdiction (standing) without addressing other grounds advanced by Defendants under Rule 12(b)(6).

These claims are dismissed without prejudice to replead.  If Defendants choose to file a second amended complaint, they are directed to do so within 21 days from the date of this Ruling's entry.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of September 2021.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge