**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KIMBERLY GARTHWAIT ET AL., | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:20-CV-00902(JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| EVERSOURCE ENERGY | : | |
| COMPANY, ET AL., | : | MAY 25, 2022 |
| Defendants, | : | |

**RULING ON MOTION TO CERTIFY CLASS (DOC. NO. 78)**

**INDEX**

I. INTRODUCTION ..................................................................................................... 2

II. BACKGROUND ................................................................................................... 3

   A. Factual Background ......................................................................................... 3

   B. Procedural Background .................................................................................... 5

III. LEGAL STANDARD ........................................................................................... 6

   A. Standing ......................................................................................................... 6

   B. Rule 23 ........................................................................................................... 7

IV. DISCUSSION ...................................................................................................... 8

   A. Standing ......................................................................................................... 8

     1. Prospective Relief ......................................................................................... 9

     2. Funds in Which Plaintiffs Did Not Invest.................................................. 13

   B. Rule 23(a).................................................................................................... 19

     1. Numerosity ................................................................................................. 20

     2. Commonality .............................................................................................. 20

     3. Typicality ................................................................................................... 23

     4. Adequacy ................................................................................................... 26

   C. Rule 23(b)(1) .............................................................................................. 32

   D. Rule 23(g)................................................................................................... 34

   E. Modifications to the Class Definition........................................................... 35

V. CONCLUSION ................................................................................................... 37

## I.    INTRODUCTION

Plaintiffs, who have participated in the Eversource 401(k) Plan ("the Plan"), bring this putative class action against Eversource Energy Company ("Eversource") and other defendants under section 1132(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), section 1001 of title 29, et seq., of the U.S. Code.  Four named plaintiffs seek to represent the putative class: Kimberly Garthwait ("Garthwait"),[1] Cumal T. Gray ("Gray"), Kristine T. Torrance ("Torrance") and Michael J. Hushion ("Hushion"), former Eversource employees and former Plan participants.  They bring their claims against the following defendants: Eversource; Eversource's Board of Directors ("the Board"); the Eversource Plan Administration Committee ("Administrative Committee"); the Eversource Investment Management Committee ("Investment Oversight Committee"); and Christine M. Carmody, Robert J. DeAngelo, Richard J. Morrison, and Michael P. Synan, Gregory B. Butler, Christine M. Carmody, James J. Judge, Philip J. Lembo, Thomas J. May, David R. McHale, and John M. Moriera, who were members of the Board, the Administrative Committee, or the Investment Oversight Committee.

Now before the court is the plaintiffs' Motion for Class Certification (Doc. No. 78), in which they propose the following class:

> All participants and beneficiaries in the Plan at any time on or after June 30, 2014 to the present (the "Class Period" or "Relevant Time Period"), including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

---

[1] While the Second Amended Complaint alleges that Garthwait is a current participant in the Plan, see Second Am. Compl. at ¶ 9, plaintiff's counsel clarified at oral argument that Garthwait is a former participant in the Plan.  See Apr. 29, 2022 Oral Argument (Doc. No. 155).

Mot. for Class Cert at 1.  The plaintiffs seek an order certifying their proposed class under Federal Rule of Civil Procedure 23(b)(1), naming Garthwait, Gray, Torrance, and Hushion as class representatives, and designating Miller Shah, LLP and Capozzi Adler, PC as class counsel.  Id.  For the reasons discussed below, the plaintiffs' Motion is granted in part and denied in part.

## II.   BACKGROUND

### A.   Factual Background

Most of the factual background relevant to this matter is detailed in the court's October 12, 2021 Amended Ruling on the plaintiffs' Motion to Dismiss.  See Am. Ruling on Mot. to Dismiss at 2-7 (Doc. No. 107).  However, after the court's Ruling, the plaintiffs filed a Second Amended Complaint adding new allegations regarding their specific investments and elaborating upon the claims in their First Amended Complaint. See Second Am. Compl. (Doc. No. 110).  Thus, the court provides a short overview of the relevant facts here.

The four named plaintiffs are former Eversource employees who were previously enrolled in the Plan, a defined contribution 401(k) retirement plan with over 11,000 Participants.  Second Am. Compl. at ¶¶ 2-4, 9-12; Pls.' Reply at 2-3 (Doc. No. 93).  In their Amended Complaint, the plaintiffs bring claims for breach of fiduciary duty, failure to monitor, and knowing breach of trust, seeking declaratory, injunctive, equitable, legal, or remedial relief pursuant to section 502 of ERISA.  See Second Am. Compl. at pp. 60-61.

In support of their claims, the plaintiffs allege, first, that the defendants breached their fiduciary duties to the Plan by charging excessive recordkeeping and administrative fees.  See Second Am. Compl. at ¶¶ 52-72.  Second, they claim that the

defendants breached their duties by investing in and retaining a suite of actively managed target date funds known as the Fidelity Freedom Funds (the "Freedom Funds") rather than their less risky, less expensive, passively managed counterparts, the Freedom Index Funds, id. at ¶¶ 73-96.  Third, they allege the defendants invested in and retained imprudent investment options.  Id. at ¶ 97.  Specifically, plaintiffs allege that the defendants imprudently invested in: (a) the underperforming Morgan Stanley Institutional Fund Emerging Markets Portfolio I, id. at ¶¶ 98-103; (b) the Frank Russell Small Cap Collective Trust, id. at ¶¶ 104-09; and (c) the Morgan Stanley Institutional Fund Small Company Growth Portfolio I. Id. at ¶¶ 110-14.  Finally, the plaintiffs allege the defendants failed to monitor the excessive fees and expense ratios for twelve of the Plan's investment options, including: (a) seven of the Freedom Funds; (b) Fidelity Low-Priced Stock K; (c) Lord Abbett Developing Growth I; (d) Fidelity Growth Company K; (e) Fidelity International Discovery K; and (f) Morgan Stanley Emerging Markets Institutional Fund. Id. at ¶¶ 115-116.  In failing to monitor the costs of the Plan's investment options, the plaintiffs allege, the defendants also imprudently retained the Fidelity Growth Company K fund rather than its cheaper collective trust counterpart and neglected to utilize the least expensive share class for the Lord Abbett Developing Growth I fund.  Id. at ¶¶ 117-121.

In total, the plaintiffs challenge 14 of the Plan's 19 investment offerings.[2] Between the four named plaintiffs, each has invested through the Plan in at least one of

---

[2] The Plan's 2017 Supplemental Schedule lists five investment options that the plaintiffs do not challenge in their Second Amended Complaint: (1) the Fidelity Spartan 500 Index Fund – Institutional Class; (2) the Jennison Associates and PIMCO Intermediate Bond Fund; (3) the Vanguard Windsor II Fund Admiral Shares; (4) the Eversource Common Shares Fund; and (5) brokerage link options.  See 2017 Supplemental Schedule (Doc. No. 88-3 at 40).

the challenged funds or suites of funds.[3]  Garthwait invested in the Fidelity Freedom 2030 Fund, one of the Freedom Funds.  Id. at ¶ 9; Garthwait Decl. at ¶ 5.  Gray invested in the Fidelity Freedom 2040 Fund through December 2015, when he transferred the balance into the Fidelity Freedom 2050 Fund.  Id. at ¶ 10.  Torrance invested in the Fidelity Freedom 2030 Fund.  Id. at ¶ 11.  Finally, Hushion invested in the Fidelity Freedom 2030 Fund, the Morgan Stanley Institutional Fund Emerging Markets Portfolio, the Frank Russell Small Cap Fund, the Morgan Stanley Institutional Fund Small Company Growth Portfolio, the Lord Abbett Developing Growth Fund, the Fidelity Growth Company Fund, the Fidelity Low-Priced Stock Fund, and the Fidelity International Discovery Fund.  Id. at ¶ 12.

     B.    Procedural Background

     The plaintiffs filed their original Complaint on June 30, 2020, see Compl. (Doc. No. 1), followed by their First Amended Complaint on September 22, 2020.  See Am. Compl. (Doc No. 26).  Subsequently, the defendants filed a Motion to Dismiss the First Amended Complaint (Doc. No. 52), which the court granted in part.  See Am. Ruling on Mot. to Dismiss (Doc. No. 107).  In its Ruling, the court dismissed without prejudice the plaintiffs' claims related to the selection, retention, and mismanagement of specific funds as well as the excessive fees or expense ratios generated by particular investment options and share classes.  See id. at 24-25.  The court determined that the plaintiffs lacked standing to bring these claims because the Amended Complaint failed

---

[3]  While the Second Amended Complaint enumerates each plaintiff's investments, the defendants also submitted Declarations which list slightly different investments for Gray, Torrance, and Hushion. Plaintiff's counsel clarified at oral argument and in a subsequent Notice to the court that the investments listed in the Second Amended Complaint are accurate.  See Apr. 29, 2022 Oral Argument; Notice (Doc. No. 152).

to specify whether any of the named plaintiffs invested in any of the allegedly mismanaged or overpriced funds.  Id. at 9-17.  The court denied the Motion to Dismiss with respect to the plaintiffs' claims that the defendants charged excessive recordkeeping fees, because such fees affect every participant in the Plan no matter which investments she holds.  See id. at 21, 24.  Following the court's Ruling and grant of leave to amend, on October 18, 2021, the plaintiffs filed their Second Amended Complaint detailing their investments.  See Second. Am. Compl. (Doc. No. 110).  In response, on March 15, 2022, the defendants filed a Motion for Summary Judgment that is pending.  See Mot. for Summary J. (Doc. No. 120).

The court now considers the plaintiffs' Motion to Certify the Class under Federal Rule of Procedure 23.  See Mot. to Certify Class.

## III.   LEGAL STANDARD

### A.   Standing

Under Article III, Section 2 of the U.S. Constitution, the jurisdiction of federal courts is limited to the resolution of cases and controversies.  See, e.g., Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012).  To ensure that federal courts consider only "those disputes in which the parties have a concrete stake", plaintiffs must show that they have "standing." Bhatia v. Piedrahita, 756 F.3d 211, 218 (2d Cir. 2014) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167 (2000)).  A plaintiff must satisfy three elements to show standing: she "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016)

6

Where plaintiffs fail to demonstrate the "irreducible constitutional minimum of standing", Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), a court "has no subject matter jurisdiction to hear their claim." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005). A lack of standing, like any other "lack of subject matter jurisdiction[,] may be raised at any time." Wight v. BankAmerica Corp., 219 F.3d 79, 90 (2d Cir. 2000).

B.    Rule 23

Federal Rule of Civil Procedure 23(a) contains four "[p]rerequisites" for class certification:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are referred to as "numerosity, commonality, typicality, and adequacy of representation."  E.g., Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 568 U.S. 455, 460 (2013).  Class certification is appropriate only if the court is satisfied, "after a rigorous analysis", that the proposed class meets each of the four prerequisites. See Wal-Mart Stores v. Dukes, 564 U.S. 338, 350–51 (2011).

In addition to satisfying the four prerequisites, a class action must qualify under at least one of the types of class actions listed in Rule 23(b).  Where, as here, plaintiffs seek to certify a class under Rule 23(b)(1), they must show, by a preponderance of the evidence, that:

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Fed. R. Civ. P. 23(b)(1); see also Amara v. CIGNA Corp., 775 F.3d 510, 519 (2d Cir. 2014).

In determining whether a putative class meets the requirements of Rule 23, the court must resolve any factual disputes and find any facts relevant to this determination. See In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 40 (2d Cir. 2006), decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig., 483 F.3d 70 (2d Cir. 2007).  The court's obligation to make such determination "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement."  Id.  The Second Circuit grants trial courts substantial discretion in determining whether to grant class certification because of the Circuit's "longstanding view that the district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted."  In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir. 2001).

## IV.    DISCUSSION

### A.    Standing

The defendants argue that the plaintiffs, as former participants in the Plan, lack Article III standing to seek prospective relief. They also contend that the plaintiffs lack

standing to represent a class challenging funds in which they have not personally invested.  <u>See</u> Defs.' Opp'n at 9-16.[4]

### 1.    Prospective Relief

In the Second Amended Complaint, the plaintiffs request "a permanent injunction against Defendants prohibiting the practices described herein and affirmatively requiring them to act in the best interests of the Plan and its participants."  <u>See</u> Second Am. Compl. at ¶ 8(b).  The defendants contend that the plaintiffs lack standing as to the prospective injunctive relief they seek given their status as former plan participants.

It is well established that a plaintiff must demonstrate Article III standing for each type of relief she or he seeks.  <u>See</u> <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 493 (2009).  To demonstrate standing to seek prospective relief, a plaintiff must show that they are likely to be subjected to future harm, <u>see</u> <u>Seidemann v. Pro. Staff Cong. Loc. 2334, Am. Fed'n of Tchrs</u>. AFL-CIO, 842 F. App'x 655, 658 (2d Cir.), <u>cert. denied sub nom.</u> <u>Seidemann v. Pro. Staff Cong. Loc. 2334</u>, 142 S. Ct. 104 (2021), <u>i.e.</u>, that a "'real or immediate threat' of injury" exists.  <u>See</u> <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 239 (2d Cir. 2016) (quoting <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (1983)).  In a class action, at least one named plaintiff must demonstrate that she or he is likely to incur such harm.  <u>See, e.g.</u>, <u>Liberian Cmty. Ass'n of Connecticut v. Lamont</u>, 970 F.3d 174, 185 n. 14 (2d Cir. 2020) ("Because we conclude that none of the named plaintiffs has standing to pursue their claims for prospective relief, the class proposed by Appellants necessarily fails as well").

---

[4] The defendants argue only that the plaintiffs lack Article III standing and do not question that the plaintiffs have statutory standing to bring their claims.  The court concludes that the plaintiffs do have statutory standing under Sections 409(a) and 502(a)(2) of ERISA.  <u>See</u> 29 U.S.C. §§ 1109(a), 1132(a)(2).

Defendants argue, and plaintiffs do not dispute, that none of the plaintiffs are still enrolled in the Plan. See Defs.' Mem. at 10; see also Pls.' Reply at 2-3 (discussing defendants' argument and characterizing all four plaintiffs as former participants); Apr. 29, 2022 Oral Argument.  Because the plaintiffs are no longer enrolled in the Plan and have not come forward with evidence that they reasonably expect to be enrolled in the Plan in the future, there is no threat of future injury from the defendants' future management (or mismanagement) of the Plan.

While the plaintiffs' Reply points to three decisions, including one issued by the undersigned, holding a plaintiff had standing to seek prospective relief after "cashing out" of a retirement plan, these cases are inapposite because they concern "statutory standing",[5] not Article III standing.  See Cryer v. Franklin Templeton Res., Inc., No. C 16-4265 CW, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017) (citing Harris v. Amgen, Inc., 573 F.3d 728 (9th Cir. 2009) for the proposition that a plaintiff seeking injunctive relief "has statutory standing to assert fiduciary duty claims under Section 502(a)(2)"); [6] Hay v. Gucci Am., Inc., No. 2:17-CV-07148, 2018 WL 4815558, at *5 (D.N.J. Oct. 3, 2018) (relying on Cryer, 2017 WL 4023149, at *4, and discussing standing under Section 502(a)(2));  Richards v. FleetBoston Fin. Corp., 235 F.R.D. 165, 174 (D. Conn. 2006) (JCH) (determining that former participants could benefit from retrospective

---

[5] "[W]hat has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016) (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 (2014)).

[6] The case which Cryer cites, Harris v. Amgen, Inc., 573 F.3d 728 (9th Cir. 2009), did address Article III standing, holding that former plan participants had standing to bring an action under section 502(a)(2) to recover losses to the plan.

injunctive relief and had statutory standing in a Section 502(a)(3) action seeking class certification under Rule 23(b)(2)).  Each of these cases concerned whether plaintiffs who were no longer enrolled in a plan could nonetheless assert a cause of action under ERISA as "participants."[7]  This court continues to agree that individuals, like the plaintiffs, who are no longer enrolled in a plan may nonetheless fall within the statutory definition of "participants" and, thus, have a cause of action under ERISA.  See Richards, 235 F.R.D. at 174.  Here, the plaintiffs are "participants" under the statute because ERISA's language is "naturally read" to include "former employees who", like the plaintiffs, "have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117–18 (1989) (internal quotation marks and citation omitted); see also 29 U.S.C. § 1002 (defining "participant" to include a former employee who "may become eligible to receive a benefit of any type . . . .").[8]

However, even if ERISA provides the plaintiffs with a cause of action, they must also demonstrate constitutional standing, because "[t]here is no ERISA exception to Article III."  Thole v. U. S. Bank N.A, 140 S. Ct. 1615, 1622 (2020); see also Spokeo,

---

[7] At oral argument, plaintiffs' counsel also cited this court's decision in Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co., No. 3:11-CV-282 JCH, 2012 WL 10242276, at *10 (D. Conn. Sept. 27, 2012), in which the court allowed a named plaintiff, who lacked standing to seek prospective relief, to "identify a new named plaintiff [to] seek injunctive relief on behalf of the class members entitled to it." Id. Healthcare Strategies has no bearing on whether the instant named plaintiffs have Article III standing to seek prospective relief.  However, as discussed below, see pp. 34-36, infra, the court will permit a class member and current Plan participant who demonstrates standing to intervene.

[8] An individual may establish that she "may become eligible" for benefits where she has "a colorable claim that . . . she will prevail in a suit for benefits." Firestone Tire & Rubber Co., 489 U.S. at 117–18; see also Saladino v. I.L.G.W.U. Nat. Ret. Fund, 754 F.2d 473, 476 (2d Cir. 1985) ("This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.'"). Here, the plaintiffs do have a colorable claim to benefits: the difference between the returns they received and the returns they would have received in the absence of the defendants' alleged breaches of fiduciary duty.

578 U.S. at 338, ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). The plaintiffs' statutory status as "participants" and their colorable claim to retrospective relief do not alter the fact that they are no longer enrolled in the Plan and will not receive future payouts from the Plan beyond any amounts to compensate them for past losses. Thus, the defendants' future management of the Plan does not pose a "real or immediate threat" to the plaintiffs and they have no Article III standing to seek forward-looking injunctive relief. See Nicosia, 834 F.3d at 239 (quoting Lyons, 461 U.S. at 111). Furthermore, the plaintiffs have failed to demonstrate that prospective injunctive relief could redress any of the past injuries they allege. Thus, to the extent that the plaintiffs seek prospective injunctive relief, see Second Am. Compl. at ¶ 60, they lack Article III standing.

To be clear, the plaintiffs seek both prospective injunctive relief to require fiduciaries to act in the Plan's best interest and retrospective relief to return losses to the Plan. See Second Am. Compl. at p. 60 ¶¶ (a) & (b). To the extent that the plaintiffs seek equitable relief requiring the payment of monies unlawfully withheld from the Plan in the past, they do have standing to assert their claims. See, e.g., Richards v. FleetBoston Fin. Corp., 235 F.R.D. 165, 174 (D. Conn. 2006) (JCH) (characterizing such relief as injunctive and determining that former plan participants had standing to seek such relief). As the Second Circuit has explained, section 502(a)(2) of ERISA authorizes derivative suits on behalf of defined contribution plans for retrospective equitable relief to make the plan whole:

> [The Supreme Court's decision in] LaRue explained that a participant in a defined contribution plan may maintain a claim for relief under section

> 502(a)(2) if a fiduciary breach impaired the value of plan assets in the participant's individual account. See LaRue, 128 S.Ct. at 1026. Such harms are of the type contemplated by the statute's draftsmen, because they affect the plan. See id. at 1025.

Fisher v. Penn Traffic Co., 319 F. App'x 34, 35 (2d Cir. 2009). Thus, the plaintiffs do have standing to seek to recover the Plan's losses, although they lack standing to pursue "a permanent injunction against Defendants prohibiting the practices described [in the Second Amended Complaint] and affirmatively requiring them to act in the best interests of the Plan and its participants." See Second Am. Compl. at ¶ 8(b).

2.    Funds in Which Plaintiffs Did Not Invest

The plaintiffs do have standing to seek non-prospective relief for injuries caused by breaches of fiduciary duty with respect to the challenged funds. See id. at p. 60 ¶¶ (b)-(e).

As the court discussed in its Ruling on the Motion to Dismiss, "district courts in this Circuit have taken two divergent approaches to Article III standing in ERISA cases [brought in a derivative capacity under section 502(a)(2)] when plaintiffs allege injuries due to deficient management or performance of funds in defined contribution plans." See Am. Ruling on Mot. to Dismiss at 11. One line of reasoning holds that plaintiffs have standing when they allege an injury to the Plan as a whole, notwithstanding their individual losses. See, e.g., Leber v. Citigroup 401(k) Plan Inv. Comm., 323 F.R.D. 145, 155 (S.D.N.Y. Nov. 27, 2017) (citing, in a case concerning a defined contribution plan, the Second Circuit's decision in Long Island Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., 710 F.3d 57, 65 (2d Cir. 2013) (hereinafter "Head Start"), which concerned a defined benefit plan).

Under this first approach, courts reason that where plaintiffs "assert[ ] their claims in a derivative capacity [under ERISA § 502(a)(2)], to recover for injuries to the Plan caused by the Administrators' breach of their fiduciary duties", they demonstrate an "injury-in-fact sufficient for constitutional standing." Head Start, 710 F.3d at 67 n. 5.

A second approach holds that a plaintiff "can only demonstrate a constitutionally sufficient injury by pointing to her individual account's specific losses during the class period." In re UBS Erisa Litig., No. 08-CV-6696 RJS, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014) (holding, in a case concerning a defined contribution plan, that a"[p]laintiff can only demonstrate a constitutionally sufficient injury by pointing to her individual account's specific losses during the class period."), aff'd sub nom. Taveras v. UBS AG, 612 F. App'x 27 (2d Cir. 2015) (summary order) ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant."). Because losses to funds in which plaintiffs did not invest cannot have caused harm to the plaintiffs' individual accounts within the Plan, under the second approach, plaintiffs lack standing to sue for losses to funds in which they did not personally invest, even if they sue in a derivative capacity on behalf of the plan.

While the Second Circuit has yet to definitively resolve, in the context of a defined contribution retirement plan, whether and to what extent a plaintiff must show individual harm to bring a derivative suit under Section 502(a)(2) of ERISA, some lower courts have reconciled the two contrasting approaches. In Brown v. Daikin, a case about a defined contribution plan, Judge Crotty acknowledged that, "the existence of personal injuries on the part of the Plaintiffs is, in fact, a necessary requirement for

Article III standing under the Supreme Court's recent decision in Thole v. U. S. Bank N.A, 140 S. Ct. 1615 (2020)[, a case about a defined benefit plan]."  No. 18-CV-11091 (PAC), 2021 WL 1758898, at *4 (S.D.N.Y. May 4, 2021).  Judge Crotty went on to determine that the personal injury requirement was "satisfied" where "the Plaintiffs personally invested in several of the Plan's investment funds that they now claim were imprudently selected."  Id.  In another defined contribution case, which like the instant matter, involved the Fidelity Freedom Funds and their index fund counterparts, the court held that named plaintiffs had standing to bring claims on behalf of absent class members who held different funds in the same suites as those owned by the named plaintiffs.  In re Omnicom ERISA Litig., No. 20-CV-4141 (CM), 2021 WL 3292487, at *6 (S.D.N.Y. Aug. 2, 2021).  In other words, the named plaintiffs—who were harmed by investing in allegedly underperforming funds—had standing to bring their claims on behalf of the Plan and on behalf of other class members who suffered harm, even if that harm was to similar, but not the same, funds.

As another court in this Circuit certifying an ERISA class consisting of participants in a defined contribution plan observed recently, "[t]he Second Circuit has considered whether named plaintiffs have class standing to bring claims related to financial instruments that plaintiffs had not purchased on behalf of the absent class members who had purchased them."  Cunningham v. Cornell Univ., No. 16-CV-6525 (PKC), 2019 WL 275827, at *3–4 (S.D.N.Y. Jan. 22, 2019) (appeal pending) (cleaned up) (emphasis in original) (citing Ret. Bd. of the Policemen's Annuity and Benefit Fund v. Bank of N.Y. Mellon, 775 F.3d 154, 160 (2d Cir. 2014)).  To bring such claims, a plaintiff must show she "personally has suffered" an injury-in-fact and that the

defendant's conduct "implicates 'the same set of concerns' as the conduct alleged to have caused injury" to the absent class members.  NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir. 2012) (internal citations omitted). "When this standard is satisfied, the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf."  Ret. Bd., 775 F.3d at 161.

Here, because the First Amended Complaint contained no allegations whatsoever that the plaintiffs had invested in any of the challenged funds, this court declined, in its earlier Ruling, to reach the question as to whether a plaintiff who alleges ownership of one or more, but not all, of the allegedly mismanaged or underperforming funds has standing to challenge injuries to the Plan caused by funds in which the plaintiff did not invest.  See Am. Ruling on Mot. to Dismiss at 14.  In their Second Amended Complaint, however, the plaintiffs have collectively alleged ownership in, and losses to, each of the challenged funds or suites of funds.  See pp. 4-5, supra.

In light of the plaintiffs' new allegations, the court concludes that they do have constitutional standing to bring their claims, except those for prospective injunctive relief.  The plaintiffs have shown that they have suffered personal injuries-in-fact, as they have identified individualized losses in specific investment funds stemming from the defendants' alleged breaches of fiduciary duty.  See, e.g., Leber, 323 F.R.D. at 156–57; see also Cunningham, 2019 WL 275827, at *3–4 (collecting cases wherein courts have "considered the question with respect to these same types of plans involving

multiple plans [and] have reached the same conclusion").[9]   Thus, the plaintiffs do not assert the kinds of purely statutory injuries against which the Supreme Court has counseled.  Cf. Spokeo ("Article III standing requires a concrete injury even in the context of a statutory violation").  Nor do they seek an "ERISA exception" to the Article III requirement that a plaintiff suffer an actual injury.  Cf. Thole 140 S. Ct. at 1622. Rather, the plaintiffs allege that the defendants mismanaged the Plan's funds, in which the plaintiffs invested, diminishing the value of the Plan and the plaintiffs' accounts. See, e.g., Second Am. Compl. at ¶ 6.  These harms, allegedly caused by the defendants, are sufficient injuries to the plaintiffs to support standing.

The plaintiffs have also shown that the putative class members face the "same set of concerns" as the putative class representatives.  NECA-IBEW, 693 F.3d at 162. They allege that the defendants' breaches of fiduciary duty led to an excessively expensive and risky menu of investment options along with high fees for all participants. See, e.g., Am. Compl. at ¶¶ 20, 49.   "Because the alleged harms are premised on the process . . . used to manage the Plan[s], the claims involve similar inquiries and proof, and thus implicate the same set of concerns."  Cunningham, 2019 WL 275827, at *3–4 (citing Moreno v. Deutsche Bank Americas Holding Corp., No. 15 CIV. 9936 (LGS), 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017); see also Leber, 323 F.R.D. at 156– 57.  Thus, the plaintiffs have constitutional standing to bring their claims on behalf of the class.

---

[9] As the Cunningham court notes, "the very reason for articulating a class standing test in NECA-IBEW was to allow named plaintiffs to bring claims related to certificates they had not purchased." Cunningham, 2019 WL 275827, at *3–4.

To the extent that the defendants argue that none of the plaintiffs ever invested in four of the challenged funds within the actively-managed Freedom Fund suite—"the Income, 2010, 2020, and 2060 Fidelity Freedom Funds"—this does not deprive the named plaintiffs of standing as to these funds.  See Opp'n at 12.  The named plaintiffs each allegedly suffered losses in funds within the Freedom Fund product line.  Each fund in the product line implicates the same set of concerns as other funds within the suite: excessive cost relative to the index-fund alternative.  See, e.g., In re Omnicom ERISA Litig., No. 20-CV-4141 (CM), 2021 WL 3292487, at *6 (S.D.N.Y. Aug. 2, 2021) ("Although the named plaintiffs did not invest in all of the Active Suite's thirteen funds, they did invest in the product line, which gives them standing to sue on behalf of the Plan for injuries incurred as a result of investment in the product line."); see also Barrows v. Becerra, 24 F.4th 116, 129–30 (2d Cir. 2022) (concluding plaintiffs had standing to bring claims on behalf of absent class members where the litigation incentives were sufficiently aligned).

Moreover, the plaintiffs have standing to bring their claims in a derivative capacity on behalf of the Plan.  See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985).  As the Supreme Court has explained, Congress intended actions under section 502(a)(2) "for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole."  Id.; see also L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc., 710 F.3d 57, 65 (2d Cir. 2013) (claims are "brought in a representative capacity on behalf of the plan."); LaRue v. DeWolff, 552 U.S. 248, 251–52 (2008) (observing that the purpose of sections 502(a)(2) and 409(a) is to "protect the entire plan, rather than the rights of an individual beneficiary").  "[T]he

basic standing issue is whether the plaintiff is within the zone of interests ERISA was intended to protect." Head Start 710 F.3d at 65  (quoting Mullins v. Pfizer, Inc., 23 F.3d 663, 668 (2d Cir. 1994).  As former employees and Plan participants with "colorable claim[s]" that they "will prevail in a suit for benefits", Firestone Tire & Rubber Co., 489 U.S. at 117–18, the plaintiffs are within the zone of interests that "ERISA was intended to protect."  See 29 U.S.C. § 1132(a)(2) (authorizing civil enforcement by a retirement plan participant under ERISA's liability provisions); see also Brown, 2021 WL 1758898, at *4 (determining that ERISA plan participants fall within the statute's zone of interests).

The plaintiffs therefore have standing to bring all of their claims on behalf of the absent class members, with the exception of any claims for prospective injunctive relief. Because the named plaintiffs lack standing to seek prospective injunctive relief, the class fails insofar as it seeks prospective relief.  See Liberian Cmty. Ass'n of Connecticut, 970 F.3d at 185 ("Because . . . none of the named plaintiffs has standing to pursue their claims for prospective relief, the class [seeking prospective relief] necessarily fails as well").

B.    Rule 23(a)

The plaintiffs must also satisfy the requirements for class certification under Federal Rule of Civil Procedure 23(a).  As the Second Circuit has explained, class certification furthers the purpose of ERISA section 502(a)(2), acting as a procedural safeguard to ensure that recovery "inures to the benefit of the [P]lan as a whole." Cooper v. Ruane Cunniff & Goldfarb Inc., 990 F.3d 173, 184 (2d Cir. 2021) (quoting Coan v. Kaufman, 457 F.3d 250 (2d Cir. 2006)). As the court discusses below, the

plaintiffs meet the criteria to certify their putative class as to their claims excepting those for prospective injunctive relief.[10]

       1.    Numerosity

The first prerequisite for class certification is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."  Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 244 (2d Cir. 2007).

Numerosity is presumed for a class in excess of forty members.  See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Vellali v. Yale Univ., 333 F.R.D. 10, 16 (D. Conn. 2019).  Here, the proposed class has more than 11,000 members.  See Pls' Mem. in Support of Mot. for Class Certification at 7 ("Pls.' Mem."); 2018 Eversource 401K Annual Return/Report of Employee Benefit Plan at 3 (Doc. No. 78-4).  As the defendants concede, see Opp'n at 23, joinder would be impracticable, and the proposed class satisfies the numerosity requirement.

       2.    Commonality

The second prerequisite for class certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Wal-

---

[10] Because the court has determined that the plaintiffs lack standing to bring their claims for prospective injunctive relief, the court conducts its Rule 23(a) analysis with respect to the plaintiffs' remaining claims for retrospective relief.

Mart, 564 U.S. at 349–50 (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1980)).  To satisfy the commonality requirement, the "claims must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350.  However, "minor factual differences will not preclude class certification if there is a common question of law." Id. at 73 (internal quotation marks omitted).  Generally, "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." In re Glob. Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (quoting Banyai v. Mazur, 205 F.R.D. 160, 163 (S.D.N.Y. 2002); see also Vellali, 333 F.R.D. at 16 (D. Conn. 2019).

While the defendants argue that class members' complaints about separate funds or investment options will not raise common questions, see Opp'n at 17-19, several common questions of law and fact that could be resolved "in one stroke" are central to the validity of the plaintiffs' claims.  For instance, the plaintiffs' claims depend on whether the defendants breached their fiduciary duties by selecting and retaining underperforming investments and by charging excessive fees.  The evidence necessary to answer these questions will "generate common answers apt to drive the resolution of the litigation." See Wal-Mart, 564 U.S. at 359.  Moreover, Plan participants selected from the same menu of allegedly pricy investment options and paid recordkeeping fees, thus the alleged Plan-wide mismanagement similarly affected all putative class members. See, e.g., Second Am. Compl. at ¶¶ 115, 34.

Multiple courts in this Circuit have determined that the commonality requirement was satisfied under similar circumstances.  In <u>Sacerdote v. New York University</u>, for instance, the court determined that the "core questions" were "common to all participants: whether defendant breached its fiduciary duties by taking actions or failing to take actions that resulted in improperly high fees, and whether certain investment options were properly included."  No. 16-CV-6284 (KBF), 2018 WL 840364, at *1 (S.D.N.Y. Feb. 13, 2018).  Likewise, in <u>Cunningham v. Cornell Univ.</u>, the court held that "[t]he claims of the proposed class turn[ed] on the 'common contention'" that breaches of fiduciary duty caused "high fees, higher-cost share classes . . . where identical lower-cost options were available, and the continued offering of underperforming funds, all claims that are 'capable of classwide resolution.'" 2019 WL 275827, at *5 (appeal pending) (citing <u>Wal-Mart</u>, 564 U.S. at 350)).  Lastly, in <u>Vellali</u>, the court determined commonality existed where common questions included "(1) whether the defendants breached their fiduciary duties, (2) whether the Plan suffered resulting losses, (3) the manner in which to calculate the Plan's losses, and (4) what equitable relief should be imposed to remedy such breaches and to prevent future ERISA violations." 333 F.R.D. at 16.  Because the instant matter also presents common questions capable of class-wide resolution, the commonality requirement is satisfied as to Plan participants who invested in the challenged funds.

The defendants also argue that commonality does not exist as to putative class members who invested in none of the fourteen funds that the plaintiffs challenge as imprudent investments (<u>i.e.</u>, those individuals who purchased only the five Plan funds not discussed in the plaintiffs' Second Amended Complaint).  As the defendants argue,

"the proposed class [of all Plan participants] presumably includes participants who never invested in any of the 14 challenged funds and thus suffered no injury from the alleged imprudence." <u>See</u> Opp'n at 18.  The plaintiffs, however, contend that common questions exist even as to Plan participants who invested <u>only</u> in the five funds that the plaintiffs do not challenge, as every Plan participant shares the plaintiffs' recordkeeping fee claims.  <u>See</u> Apr. 29, 2022 Oral Argument.

Whether the defendants failed to negotiate for appropriate recordkeeping fees for the Plan, as the plaintiffs allege, is a common question with a common answer as to all Plan participants, even those who invested in the five funds whose performance is not at issue.  Accordingly, the plaintiffs satisfy the commonality prong of Rule 23.

　　　　　3.　　　Typicality

The third prerequisite for class certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  <u>Cent. States</u>, 504 F.3d at 245.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  <u>Robidoux</u>, 987 F.2d at 936–37; <u>see also</u> <u>Wynn</u>, 314 F.R.D. at 126 ("The typicality requirement may be satisfied where injuries derive from a unitary course of conduct by a single system" (internal quotation marks omitted)). On the other hand, "[a] lack of typicality may be found in cases where the named plaintiff was not harmed by the conduct he alleges to have injured the class or the named plaintiff's claim is subject to 'specific factual defenses'

atypical of the class." Wynn, 314 F.R.D. at 126–27 (internal quotation marks and brackets omitted).

Here, the plaintiffs' claims arise from the same course of events and turn on the same legal issues as the claims of class members: the defendants' alleged breach of fiduciary duty harming the Plan.  The factual circumstances supporting the plaintiffs' breach claims are also largely shared, as they concern the conduct of the defendants and the participation of each class member in the Plan.  Courts in this and other Circuits have found the typicality requirement satisfied in similar ERISA cases alleging breach of fiduciary duty.  See, e.g., Sacerdote, 2018 WL 840364, at 3; Cunningham., 2019 WL 275827, at *7 (appeal pending); Vellali, 333 F.R.D. at 17; Moreno, 2017 WL 3868803, at *7 ("Plaintiffs are five current or former participants in the Plan. . . . Their claims arise from the same course of events—their participation in the Plan. They make similar legal arguments . . .—that Defendants mismanaged the Plan in violation of ERISA and continue to do so today . . . ."); Boley v. Universal Health Servs., Inc., 337 F.R.D. 626, 631-636 (E.D. Pa. 2021) (determining plaintiffs satisfied the typicality requirement when asserting claims related to Fidelity Freedom Funds nearly identical to those in the instant case); Clark v. Duke Univ., No. 16-1044, 2018 WL 1801946, at *5-7 (M.D.N.C. Apr. 13, 2018); Henderson v. Emory Univ., No. 16-2920, 2018 WL 6332343, at *6 (N.D. Ga. Sept. 13, 2018)).

The defendants argue that the plaintiffs fail to demonstrate typicality, largely relying on a Seventh Circuit case, Spano v. The Boeing Co., 633 F.3d 574, 586 (7th Cir. 2011).  In that case, the court declined to certify a class for a lack of typicality, noting that "it seems that a class representative in a defined contribution case would at a

minimum need to have invested in the same funds as the class members." Id.

However, multiple courts in this Circuit have considered and rejected the applicability of

Spano to claims like those the plaintiffs raise.  Indeed, one district court recently

summarized the argument succinctly:

> Spano is not binding authority, and both the Leber [, 323 F.R.D. 145], and
> Moreno [, 2017 WL 3868803], courts considered and rejected its
> applicability in similar cases.  The Leber[ ] court in particular found
> that Spano is distinguishable both because of the underlying facts and
> because the Second Circuit, unlike the Seventh, does not have a per se rule
> requiring exact congruence of investments. Leber [ ], 323 F.R.D. at 163.
> The court also rejected the Spano court's typicality analysis because
> "[proving liability in Spano would not only have required the consideration
> of a fiduciary's conduct with respect to each individual fund, but would have
> also required plaintiffs to prove their claims through separate inquiries
> making use of distinct metrics," and the proper inquiry instead was whether
> all the funds at issue were proprietary funds and whether class members'
> claims implicated "allegedly disloyal and imprudent conduct that impacted
> them in the same manner." Id. (citing Robidoux, 987 F.2d at 936–37); see
> also Moreno, 2017 WL 3868803, at *5 ("Liability is determined based on
> Defendants' not Plaintiffs' decisions.") . . . .

Falberg v. Goldman Sachs Grp., Inc., No. 19 CIV. 9910 (ER), 2022 WL 538146, at *8

(S.D.N.Y. Feb. 14, 2022).  This court agrees.

The defendants also contend that the plaintiffs' claims are not typical of those of

class members who invested in Freedom Funds other than the 2030, 2040, and 2050

target date funds owned by the plaintiffs.  However, the claim that the plaintiffs raise

regarding the suite of target date funds—namely, that the defendants should have

selected the cheaper suite of Freedom Index Funds—is typical of all individuals

invested in the suite of Freedom Funds.  See Second Am. Compl. at ¶¶ 74-76; cf. p. 18,

supra (determining the named plaintiffs have standing to bring claims on behalf of

absent class members invested in the Freedom Fund suite).

Lastly, the defendants argue that the plaintiffs cannot show typicality because every fund in the Freedom Fund suite outperformed its index-fund counterpart over certain periods of time.  See Opp'n at 21-22.  However, on the plaintiffs' theory that the index-fund suite should have replaced the Freedom Fund suite, each participant invested in the active funds would have either benefitted or suffered had the change been made.  While courts must "resolve factual disputes relevant to each Rule 23 requirement", the Second Circuit has made clear that "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement" and that she should "assure that a class certification motion does not become a pretext for a partial trial of the merits." In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).  Here, the funds' performance and the fiduciaries' prudence in selecting them goes to the merits of the case rather than the typicality of the plaintiffs' claims.

Thus, following the lead of a majority of courts in this Circuit and determining that the plaintiffs' claims arise from the same course of events and depend upon similar legal theories of imprudent conduct impacting all class members in a similar manner, the court concludes that the typicality requirement has been met as to Plan participants who invested in the challenged funds or suites of funds.

### 4. Adequacy

The fourth prerequisite for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Whether representation is adequate hinges on two inquires: whether (1) a "plaintiff's interests are antagonistic to the interest of other members of the class" and (2) a "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).  The

adequacy requirement "'tend[s] to merge' with the commonality and typicality criteria,"
all of which "serve as guideposts for determining whether . . . maintenance of a class
action is economical and whether the named plaintiff's claim and the class claims are so
interrelated that the interests of the class members will be fairly and adequately
protected in their absence." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 626 (1997)
(citing General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157, n. 13 (1982)).

a.    Class Representatives

The plaintiffs are adequate class representatives because their interests are
aligned with those of the Plan participants (putative class members) who likewise seek
recovery (on behalf of the Plan) for the defendants' breaches of fiduciary duty.  With
respect to the plaintiffs' claims regarding excessive recordkeeping and administrative
fees, this case is governed by "[t]he general rule . . . that there is 'a relatively low
likelihood of intra-class conflict in cases of excessive fee claims' because recovery is to
the Plan, not to individual Plaintiffs . . . ."  Beach 2019 WL 228631, at *8 (quoting Leber,
323 F.R.D., at 164).  While the defendants argue that "the putative class members who
paid little or nothing toward recordkeeping" under the current arrangement "could be
affirmatively harmed if Plaintiffs were to prevail", Opp'n at 20, the defendants have failed
to demonstrate how any Plan participant would have been harmed had the defendants
negotiated for lower fees.  See Second Am. Compl. at ¶¶ 56, 72; see also Apr. 29, 2022
Oral Argument.[11]   As to the remaining claims, the plaintiffs share with class members

---

[11] At Oral Argument, counsel for the defendants clarified that, under the Plan's revenue sharing
arrangement, owners of certain funds pay low or no fees while owners of other funds pay a higher
proportion of their investment to recordkeeping obligations.  Thus, the defendants contend, if the Plan had
changed its recordkeeping fee allocation practices or if low-fee funds had been replaced with high-fee
funds, the owners of low-fee funds could be harmed by the change.  See Apr. 29, 2022 Oral Argument.

an interest in establishing the defendants' liability for breach of fiduciary duty in selecting and retaining underperforming or expensive funds.

The defendants contend that the plaintiffs "purport to challenge—and thus seek to represent absent class members challenging—investment options in which [the plaintiffs] themselves never invested."  See Opp'n at 26.  However, the plaintiffs' Second Amended Complaint makes clear that at least one named plaintiff has invested in each of the challenged investment options or suites of investment options.  See pp. 4-5, supra.  To the extent that the defendants argue that the plaintiffs are not adequate representatives of Plan participants who invested in four of the Freedom Funds not held by the plaintiffs, the plaintiffs' incentives are sufficiently aligned with those of absent class members invested in the same suite of funds: allegedly, all investors in the challenged funds within the suite could have benefitted from the cheaper index fund alternative.  See Second Am. Compl. at ¶ 74.

The defendants also argue that the plaintiffs lack the requisite knowledge of and involvement in this case to serve as adequate representatives.  However, while the court may deny representative status to individuals who "have so little knowledge of and involvement in the class action, (i.e., they do not know what claims remain in the case) that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys", Baffa, 222 F.3d at 61, "[t]he Supreme Court . . . [has] expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance." Id. at 61-62 (overturning a district court's decision to block a plaintiff's intervention as class representative when

---

However, the defendants have not demonstrated how any class member would have been harmed had the defendants negotiated for the Plan to pay lower total recordkeeping fees.

the plaintiff relied on his attorneys, participated in meetings, reviewed and signed the amended complaint, and reviewed the financial information relevant to the case).  In Baffa and other ERISA cases in this Circuit, courts have established a low bar for representatives to demonstrate an adequate understanding of their claims.  See also, Vellali, 333 F.R.D. at 17 (determining a plaintiff sufficiently understood an ERISA action when he testified that "upon the advice of [his] attorneys, [he] felt that Yale fell short on the management of [the Plan's] funds", and knew that he would  "represent . . . around 17,000 individuals who would have been adversely affected by their participation in the plan . . . ."); see also Moreno, 2017 WL 3868803, at *7 (S.D.N.Y. Sept. 5, 2017) ("The claims here involve technical financial decisions . . . and Plan fiduciaries' compliance with the requirements of ERISA. It is understandable, and excusable, that Plaintiffs, who are not lawyers or investment professionals, may have had difficulty answering questions about the claims.").

In this case, the plaintiffs have demonstrated an adequate understanding. Garthwait testified that she reviewed the initial and Amended Complaints,[12] see Garthwait Depo. at 20 (Doc. No. 88-6), and that she understood the Freedom Index Funds to be a lower-risk alternative to the Freedom Funds in which she was invested. Id. at 29-30.  Torrance also testified that she understood Eversource to have taken risks by investing in "active fund[s] versus more of an index conservative fund" and charging high recordkeeping fees.  Torrance Depo. at 22-23, 39 (Doc. No. 88-7).  Hushion, too, testified that Eversource offered "funds that could have been lower price" with high

---

[12] The Motion for Class Certification and accompanying Declarations were filed before the plaintiffs filed their Second Amended Complaint on October 18, 2021.  Thus, the record does not reflect whether the plaintiffs have reviewed the Second Amended Complaint.

recordkeeping fees.  See Hushion Depo. at 12 (Doc. No. 93-4).  Gray likewise testified as to his understanding of the case, stating that he intended to "hold Eversource accountable" for selecting "active fund[s] versus . . . index fund[s]", for high recordkeeping fees, and for underperforming funds.  See Gray Depo. at 29 (Doc. No. 88-5).  These representations, along with the plaintiffs' Declarations stating that they have reviewed the allegations, they have communicated with counsel to stay informed and assist in discovery, and they intend to see the litigation through to its conclusion, see Declarations (Doc. Nos. 78-9, 78-10, 78-11, 78-12),  demonstrate that the plaintiffs are neither "unable [n]or unwilling" to protect the interests of the class.  Baffa, 222 F.3d at 61.

The defendants also argue that plaintiff Gray has released his claims against Eversource, including those for breach of fiduciary duty under ERISA.  See Opp'n at 37-39.  When his employment at Eversource ended, Gray signed a "Separation Agreement and General Release."  See Release (Doc. No. 88-9).  In the agreement, Gray agreed to release Eversource and its directors and agents from "any and all claims of any kind arising from any facts, whether known or unknown to [Gray], from the beginning of time until" June 4, 2019.  Id. at 2.  The release contained an exception for "vested rights to retirement, pension, or 401(k) plans."  Id. at 3.  Because Gray ceased to be invested in any of the challenged funds as of June 21, 2019, the defendants argue that he relinquished his right to challenge the Plan's management outside of the three-week period from June 4 to June 21, 2019.  Opp'n at 38.

In similar cases, however, district courts in this Circuit have largely held that, "under ERISA, individuals do not have the authority to release a defined contribution

plan's right to recover for breaches of fiduciary duty." In re Polaroid ERISA Litig., 240 F.R.D. 65, 75 (S.D.N.Y. 2006) (collecting cases); see also Taylor v. United Techs. Corp., No. 3:06CV1494 (WWE), 2008 WL 2333120, at *4 (D. Conn. June 3, 2008) ("ample case law holds that the signing of releases does not affect typicality where ERISA claims allege damage to the Plan as a whole rather than to individuals"); Leber, 323 F.R.D. at 161 ("the consent of the plan is required for a release of [ERISA § 502(a)(2)] claims."); Moreno, 2017 WL 3868803, at *6. Because the plaintiffs seek to bring this suit on behalf of the Plan in a derivative capacity, Gray cannot have unilaterally released his right—or the Plan's right—to sue under section 502(a)(2) for breach of fiduciary duty harming the Plan.

The defendants rely on out-of-circuit cases to the contrary, most pertinently Stanley v. George Washington Univ., 394 F. Supp. 3d 97, 107 (D.D.C. 2019), aff'd, 801 F. App'x 792 (D.C. Cir. 2020). In Stanley, the named plaintiff signed a release of "any and all claims" alleging violations of "any federal . . . statute" and excluding "claims for vested benefits under employee benefits plans." 394 F. Supp. 3d at 107. The court determined that she had released her ERISA claims and that derivative claims for breach of fiduciary duty under section 502(a)(2) did not fall within the exception for "claims for vested benefits under employee benefits plans." Id. at 108; see also Howell v. Motorola, Inc., 633 F.3d 552, 558 (7th Cir. 2011) (finding a plaintiff released claims under ERISA § 502(a)(2) when he signed a general release including "any claim or entitlement to pay, benefits or damages arising under any federal law (including but not limited to . . . [ERISA])"). However, the Stanley court did not discuss whether the plaintiff could release her right to sue in a derivative capacity for harm to the Plan under

section 502(a)(2).  Thus, the court will follow the majority of district courts in this Circuit, cited above, in concluding that Gray has not released his right to bring the section 502(a)(2) claims at issue in this case.

For the above reasons, the named plaintiffs, including Gray, are adequate representatives of the class insofar as they seek retrospective relief.

b.    Counsel

The defendants do not challenge the adequacy of proposed class counsel: Miller Shah and Capozzi Adler.  Both firms have substantial experience in class action litigation, including ERISA class actions.  See Rubinow Decl. at ¶¶ 19-21 (Doc. No. 92); see also Gyandoh Decl. at ¶¶ 17-23.  Attorneys from both firms have been actively engaged in all stages of the suit so far, see Rubinow Decl. at ¶ 3; Gyandoh Decl. at ¶ 3, and have expressed a willingness and ability to deploy resources on behalf of the proposed class.  Rubinow Decl. at ¶ 21; Gyandoh Decl. at ¶ 23.  Thus, the court concludes that Miller Shah and Capozzi Adler are "qualified, experienced and able to conduct the litigation."  Baffa, 222 F.3d 52 at 60.

C.    Rule 23(b)(1)

The plaintiffs contend that the class should be certified under Rule 23(b)(1).  The requirements of Rule 23(b)(1) are satisfied where "prosecuting separate actions by or against individual class members would create a risk of" either "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or "adjudications with respect to individual class members that, as a practical matter, would . . . substantially impair or impede [non-parties'] ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

"Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike", while Rule 23(b)(1)(B) is appropriate in situations where relief for some interested individuals may conflict with granting relief to others, such as "'limited fund' cases." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997) (internal quotation marks omitted); see also Wal-Mart, 564 U.S. at 361 n.11 (quoting Amchem). As the Supreme Court has aptly summarized, the justification for a Rule 23(b)(1) class is "that individual adjudications would be impossible or unworkable." Wal-Mart, 564 U.S. at 361.

Where, as here, a putative class consists of thousands of ERISA plan participants, certification under 23(b)(1)(A) is appropriate, because allowing thousands of "individual [ERISA] cases could result in varying adjudications over defendant's alleged breach and how to measure the damages." No. 16-CV-6284 (KBF), 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018) (determining certification under Rule 23(b)(1)(A) was warranted in an action for breach of fiduciary duty under ERISA § 502(a)(2)); see also Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co., No. 3:11-CV-282 JCH, 2012 WL 10242276, at *10 (D. Conn. Sept. 27, 2012) ("Courts, including this one, have noted that Rule 23(b)(1)(A) certification is particularly well-suited to certain ERISA class actions."). The plaintiffs allege that the defendants owed and breached a fiduciary duty by mismanaging the Plan, affecting more than 11,000 putative class members. Thus, certification under 23(b)(1)(A) is warranted.

Alternatively, Rule 23(b)(1)(B) provides a ground for certification. Rule 23(b)(1)(B) applies in "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries,

requiring an accounting or similar procedure 'to restore the subject of the trust.'" <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815, 834 (1999) (quoting Advisory Committee Notes on Fed. Rule Civ. Proc. 23).  Here, the plaintiffs assert claims of fiduciary breach harming the Plan.  Accordingly, 23(b)(1)(B) certification is appropriate because "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members . . . ." <u>Id.</u>; <u>see also</u> <u>Sacerdote</u>, 2018 WL 840364, at *6 (same).

"Because plaintiffs' allegations are brought with respect to breaches of fiduciary duties to the Plan[ ] as a whole, defendants' duties rise and fall with all plaintiffs." <u>See Cunningham</u>, 2019 WL 275827, at *8.  Thus, the class is properly certified under 23(b)(1)(A) or, alternatively, 23(b)(1)(B).

D.   <u>Rule 23(g)</u>

Under Federal Rule of Civil Procedure 23(g)(1), "a court that certifies a class must appoint class counsel."  To appoint class counsel, the court must consider four factors to determine whether counsel will fairly and adequately represent the interest of the class:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(A) and (g)(4).  The court may also weigh "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel have experience litigating ERISA class actions and have represented parties bringing breach of fiduciary duty claims.  Rubinow Decl. at ¶¶ 19-21; Gyandoh Decl. at ¶¶ 17-23.  In the instant case, plaintiffs' counsel have diligently litigated on behalf of their clients, responding to a Motion to Dismiss, engaging in discovery, and adhering to court-ordered scheduling.  They testify that they will commit the resources necessary to zealously represent the proposed class.  Rubinow Decl. at ¶ 21; Gyandoh Decl. at ¶ 23.   The court therefore appoints Miller Shah and Capozzi Adler class counsel.

E.    Modifications to the Class Definition

As the court has discussed, the plaintiffs—former Plan participants—cannot adequately represent current participants seeking prospective injunctive relief. However, "[a] court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."  Robidoux, 987 F.2d at 937; see also 5 Moore's Federal Practice § 23.21 (3d ed. 2017) (the court "has broad discretion to modify the class definition as appropriate").

Rule 23 provides two avenues for courts to tailor a class to fit the Rule's requirements.  First, Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). The Rule may be applied "to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement."  In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006).  Rule 23(c)(5) provides another mechanism for courts to reshape class definitions, permitting a class to be "divided into subclasses that are each treated as a class under this rule." Fed. R.

Civ. P. 23(c)(5).  Under either subsection of Rule 23(c), it is a "plaintiff's burden to show how the action may be [modified] to avoid certification problems."  Lundquist, 993 F.2d at 14 (quoting Geraghty, 445 U.S. at 408, 100 S.Ct. 1202).  Whether and how to modify a class is within the discretion of the district court.  See In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 463–65 (S.D.N.Y. 2018).

Here, the plaintiffs lack standing to bring their claims for prospective injunctive relief.  See pp. 9-13, supra.  Therefore, the court will exercise its discretion under Rule 23(c)(4) to limit the claims at issue to those for retrospective relief.

However, the court grants the plaintiffs leave to move to amend to add as a named plaintiff a member of the proposed class with standing to bring claims for prospective relief—i.e., a current Plan participant.  See, e.g., Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co., No. 3:11-CV-282 JCH, 2012 WL 10242276, at *10 (D. Conn. Sept. 27, 2012) (the court may allow plaintiffs to identify a new named plaintiff who may seek injunctive relief on behalf of the class members entitled to it).  While the court acknowledges that discovery has closed and the parties have briefed a Motion for Summary Judgment, see Mot. for Summary J. (Doc. No. 120), the defendants have argued their Motion on the merits as if the named plaintiffs already had standing to bring all of their claims for each type of relief.  Therefore, adding a named plaintiff with standing to seek prospective injunctive relief will not be highly prejudicial to the defendants, nor will it require them to expend resources conducting additional discovery.  AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) (internal citation omitted) (explaining that courts in this Circuit generally grant leave to amend in the "absence of prejudice or bad faith.").

## V.    CONCLUSION

For the foregoing reasons, the Motion for Class Certification (Doc. No. 78) is granted in part as to a class of participants and beneficiaries in the Plan at any time on or after June 30, 2014, to the present, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.  The class is certified only as to the plaintiffs' claims for retrospective relief.

Insofar as the plaintiffs seek to certify a class pursuing prospective injunctive relief, their Motion is denied in part for a lack of standing, unless within 30 days a member of the proposed class with standing to bring such claims moves for and is granted leave to intervene.  See, e.g., Norman v. Connecticut State Bd. of Parole, 458 F.2d 497, 499 (2d Cir. 1972) (remanding to the district court with instructions to dismiss for inadequate representation unless another qualified class member intervened).

Further, the court may well create subclasses should conflicts among the interests of class member arise over the course of this litigation.  The court enters this Ruling with the understanding that certification may be revisited at the remedial stage if such concerns become apparent.  See Fed.R.Civ.P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); see also United States v. City of New York, 258 F.R.D. 47, 64 (E.D.N.Y. 2009) (certifying a class but stating that the court would reconsider certification at the remedial stage).

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of May 2022.


   __/s/ Janet C. Hall_____
   Janet C. Hall
   United States District Judge