**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KIMBERLY GARTHWAIT, ET AL. | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:20-CV-00902 (JCH) |
| | : | |
| v. | : | |
| | : | |
| EVERSOURCE ENERGY | : | DECEMBER 7, 2022 |
| COMPANY, ET AL., | : | |
| Defendants. | : | |

**RULING ON DEFENDANTS' MOTION TO STRIKE**
**PLAINTIFF'S JURY DEMAND (DOC NO. 158)**

I.      **INTRODUCTION**

A class of former and current participants in the Eversource 401(k) Plan ("the Plan") brings this action against Eversource Energy Company ("Eversource") and other defendants for fiduciary breach claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), section 1001 of title 29, et seq., of the U.S. Code.

In their initial and amended Complaints, the four named plaintiffs—Kimberly Garthwait ("Garthwait"), Cumal T. Gray ("Gray"), Kristine T. Torrance ("Torrance"), and Michael J. Hushion ("Hushion")—demanded a trial by jury of all claims in this action. See, e.g., Second Amended Complaint ("Compl.") at 61 (Doc. No. 110).  The three counts in the Second Amended Complaint allege: (1) breach of fiduciary duty pursuant to sections 409(a) and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109(a), 1132(a)(2); (2) failure to monitor fiduciaries and co-fiduciary breaches pursuant to sections 405(a), 409(a), and 502(a)(2) of ERISA, 29 U.S.C. §§ 1105(a), 1109(a), 1132(a)(2); and (3) in the alternative, liability for knowing breach of trust, pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  Compl. at ¶¶ 142-58.  As relief, the plaintiffs seek—among

1

other things—to have defendants "restore to the Plan the losses that have been suffered as a direct result of defendants' breaches of fiduciary duty," id. ¶ 146; see id. ¶ 154, as well as "other available equitable or remedial relief, including prospective injunctive and declaratory relief," id. ¶146.

The defendants have filed a Motion to Strike Plaintiffs' Jury Demand (Doc. No. 158), arguing that neither ERISA nor the Seventh Amendment provide a jury trial right for fiduciary breach claims. See Defendants' Memorandum of Law in Support of Motion to Strike Plaintiffs' Jury Demand ("Defs.' Mem.") at 1 (Doc. No. 158–1). The plaintiffs oppose the Motion, averring that the relief sought is legal rather than equitable because it demands compensation from defendants' general assets. See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Strike Jury Demand ("Pls.' Opp.") at 2 (Doc. No. 160).

For the reasons discussed below, the Motion is granted in part and denied in part.

## II.   LEGAL STANDARDS

Under Rule 39(a), where a party has properly demanded a trial by jury, "[t]he trial on all issues so demanded shall be by jury, unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. Rule 39(a). Where a statute is silent as to whether the parties are entitled to a jury trial, the court must "consider whether a jury right inheres in the plaintiffs' claim by virtue of the Seventh Amendment." Brown v. Sandimo Materials, 250 F.3d 120, 126 (2d Cir. 2001). "The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates

legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." Curtis v. Loether, 415 U.S. 189, 194 (1974).

In determining whether a particular action is a suit at law that triggers the jury trial right under the Seventh Amendment, the court must apply a two-step test. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989). First, the court "compare[s] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." Id. Second, the court "examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature." Id. The latter of the two inquiries is more important than the former. Id.

### III.    DISCUSSION

ERISA does not provide an explicit jury trial right. See Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-Coll. Ret. & Equities Fund, 2013 WL 6189802, at *10 (D. Vt. Nov. 27, 2013). As such, the court must undertake the two-step Granfinanciera analysis.

As a "general rule," claims arising from breach of fiduciary duty "were historically within the jurisdiction of the equity courts." Pereira v. Farace, 413 F.3d 330, 338 (2d Cir. 2005) (quoting Chauffers, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567 (1990)). To assess if the "general rule" applies to the case at bar, courts look to the "nature of the issues" and whether the breach of fiduciary duty claim "actually sound[s] in a traditional legal theory such as breach of contract or negligence." Cunningham v. Cornell Univ., 2018 WL 4279466, at *2 (S.D.N.Y. Sept. 6, 2018). The fiduciary duties under ERISA "draw much of their content from the common law of trusts", Varity Corp. v. Howe, 516 U.S. 489, 496 (1996), with the Plan typically treated as a trust and the Plan's fiduciaries as trustees. CIGNA Corp. v. Amara, 563 U.S. 421,

3

439 (2011).  Here, the plaintiffs' breach of fiduciary duty claims are analogous to breach of fiduciary duty claims under the law of trusts, which would have been equitable in 18th century England.  See Cent. States Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985); see also Restatement (First) of Trusts § 174 (1935) ("[T]rustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property. . . ").  Thus, the first step of the Granfinanciera analysis weighs against a jury trial.

The more consequential step of the Granfinanciera analysis, however, turns on the evaluation of the remedy requested as either legal or equitable.  In Count One, the plaintiffs seek to have defendants "restore to the Plan the losses that have been suffered as a direct result of defendants' breaches of fiduciary duty," as well as "any other available equitable or remedial relief, including prospective injunctive and declaratory relief. . . ."  Id. ¶146.  The relief in Count Two similarly requests defendants' "make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count," but also calls for the restoration "to the Plan [of] any profits made through use of Plan assets," in addition to "other equitable or remedial relief as appropriate."  Id. ¶ 154.  The alternative claim in Count Three calls for each defendant to be "enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a knowing breach of trust."  Id. ¶ 157.

The relief contemplated in Count Three is clearly and explicitly equitable in nature; the remedies in Counts One and Two are not as straightforward.  In Great-West Life & Annuity Ins. Co. v. Knudson, the Supreme Court determined that "not all relief

falling under the rubric of restitution is available in equity."  534 U.S. 204, 212 (2002).  In a decision that "reconfigured the legal landscape of restitution," Pereira, 413 F.3d at 340, the Great-West Court held that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  534 U.S. at 214–15. Accordingly, under the Great-West test for equitable restitution, the key is identifiable property in the hands of the defendant.  Reading the Great-West decision broadly, the Second Circuit extended it to the second-step of Seventh Amendment analysis under Granfinanciera.  Pereira, 413 F.3d at 340–41.

Applied to the case at bar, the restoration of losses to the Plan—requested in Counts One and Two—would not be equitable restitution as the defendants are not alleged to have possessed those funds.  Thus, a Great-West and Pereira analysis would suggest that plaintiffs are entitled to a jury trial for the "make good" claims in Counts One and Two.

In arguing in favor of striking the jury demand in its entirety, the defendants posit that an intervening Supreme Court decision must alter the court's analysis.  Defs.' Mem. at 2–3.  In Amara, the Supreme Court emphasized that "[e]quity courts possessed the power to provide relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty. . . ."  Amara, 563 U.S. at 441 (quotation and citation omitted). Indeed, this monetary remedy—known as surcharge—was "exclusively equitable" and "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary."  Amara, 563 U.S. at 442.  Moreover, the Supreme

Court distinguished <u>Great-West</u>—where the action was brought by a fiduciary against a beneficiary—from the more typical context in which <u>Amara</u> arose:

> The case before us concerns a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust).  It is the kind of lawsuit that, before the merger of law and equity, respondents could have brought only in a court of equity, not a court of law.

<u>Id.</u> at 439–40.

However, as another district court in this Circuit has pointed out, defendants' reliance on <u>Amara</u> in a Seventh Amendment setting is not without flaw.  <u>See</u> <u>Cunningham v. Cornell Univ.</u>, 2018 WL 4279466, at *3.  First, <u>Amara</u> and <u>Great-West</u> discussed "equitable relief" in the context of section 502(a)(3) of ERISA; unlike <u>Pereira</u>, which was "implicitly premised upon consideration of 18th century practice in courts of equity as it informed the Seventh Amendment right to trial by jury."  <u>Id.</u>  This is germane because the "merger of law and equity referenced in <u>Amara</u> occurred in 1938 with the adoption of Rule 2, Fed. R. Civ. P.—not in the late 18th century when the Seventh Amendment was adopted."  <u>Id.</u>  Second, prior to the merger of law and equity referenced in <u>Amara</u>, courts of equity began awarding legal relief—an occurrence that did not transform "legal relief into equitable relief."  <u>Id.</u>; <u>see also</u> <u>Mertens v. Hewitt</u> <u>Assocs.</u>, 508 U.S. 248, 256 (1993) ("At common law, however, there were many situations—not limited to those involving enforcement of a trust—in which an equity court could 'establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority.'").

Ultimately, both parties acknowledge the split within this Circuit as to whether "make good" claims arising from a breach of fiduciary duty demand a jury trial.  <u>See</u>

Defs.' Mem. at 7; Pls.' Mem. 7–8; compare, e.g., Bauer-Ramazani, 2013 WL 6189802, at *12 (granting a motion to strike the jury demand in an ERISA breach of fiduciary duty case where the plaintiff beneficiary sought compensation from the fiduciary), with Cunningham, 2018 WL 4279466, at *4 (denying a motion to strike the jury demand "as to all claims by beneficiaries against fiduciaries to personally make good to the Plans all losses to the Plans resulting from each breach of fiduciary duty").  Despite the lack of consensus within the Circuit, the court is persuaded by the reasoning articulated in Cunningham:

> [U]nless and until [Pereira] is overruled or clear Supreme Court precedent intervenes, this Court must follow it.  Lower courts are constrained to follow directly controlling precedent even where that decision appears to rest on reasons rejected in another line of decisions.  In the context of the assertion of a constitutional right to trial by jury, this Court cannot say that Amara so undermines Pereira that it is nearly inevitable that it will be overruled by the Second Circuit.

Id. (quotations and citations omitted).

## IV.    CONCLUSION

The Motion to Strike Plaintiffs' Jury Demand (Doc. No. 158) is granted in part and denied in part.  The Motion is denied as to the "make good" claims in Counts One and Two, but it is otherwise granted.[1]

---

[1] While the court might have preferred that the Motion to Strike Plaintiffs' Jury Demand be filed sooner, the court sees no prejudice to plaintiffs as a result of its timing.  Therefore, the court does not deny the Motion on that ground.

**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of December 2022.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge